*580
 
 Mr. Justice MILLER
 

 delivered the opinion of the court.'
 

 This writ of error is based upon the proposition that the-city ordinance is in conflict with two clauses of the Constitution of the United States, namely, that which grants to Congress the right to regulate commerce with foreign nations, among the States, and with the Indian tribes; and that which forbids the States to levy any duty of tonnage without the consent of Congress.
 

 We shall only consider the question raised by the latter clause;
 

 It is argued in support of the validity of the ordinance that the money collected under it is only a compensation for the use of the whar'ves which are owned by the city, and which have been built and áre kept in repair by the city corporation.
 

 Under the evidence in this ease of the condition of the levee and banks of the Mississippi River within the' limits of the city, to which the language of the ordinance must be applied, this contention cannot be sustained. It is in proof that of the twenty miles and more of the levee and banks of the Mississippi within the city, not more than one-tenth has any wharf,, and that vessels land at various places where no such accommodations exist. The language of the ordinance covers landing anywhere within the city limits. The tax is, therefore, collectible for vessels which land at any point on the banks of the river, without regard, to the existence of the wharves. The tax is also the same for a vessel which is moored in any part of the port of New Orleans, whether she ties up .to a wharf or not, or is located at the shore or in the middle of the river. A tax which is, by its termfe, due from all vessels arriving and stopping in a port, without re-gard to the place where they may stop, whether it be in, the channel of the stream, or out in a bay, or lahded at a natural river-bank, cannot be treated as a compensation for the use of a wharf. This view is additionally enforced if,, as stated by counsel for the plaiu'tift', in their argument, the Supreme Court of the State has decided that, under the act of. 1843
 
 *581
 
 of the Louisiana legislature, no wharfage tax or duty can he levied or collected by' the city.
 

 We are of opinion that upon the face of the ordinance itself, as applied to the recognized condition of the river and its banks within-the city, the dues here claimed cannot be, supported as a compensation for the use of tlie city’s wharves, but that it'is a tax upon every vessel which stops, either by landing or mooring, in the waters of the Mississippi River within the city of New Orleans, for the privilege of so landing or mooring.
 

 In this view of the subject, as the assessment of the tax is measured by the.tonnage of the vessel, it falls directly within the prohibition of the Constitution, namely, “ that no State shall, without the consent of Congress, lay any duty of tonnage.” Whatever more general or more limited view may be entertained of the true meaning of this clause, it is perfectly clear that a duty or tax or burden imposed under the authority of the State, which is, by the law imposing it,'to be measured by the capacity of the vessel, and is in its essence a contribution claimed for the privilege of arriving and departing from a port of the United States, is within ■the prohibition.
 

 There have been, several cases before this court involving the construction of this provision. The more recent and wrnll considered of these are
 
 The Steamship Company
 
 v.
 
 The Portwardens,
 

 *
 

 The State Tonnage Tax
 
 Cases,
 
 †
 
 and
 
 Peete
 
 v.
 
 Morgan.
 

 ‡
 

 In the first of these cases the late Chief Justice, who delivered the opinion, seemed inclined to guard against too narrow a construction of the clause, lest its spirit and purpose might be evaded. He says, “ that in the most obvious and general sense, it is.true, the words describe a duty proportioned to the tonnage of the vessel; a certain rate on each ton. But it seems plain that in this restricted sense, the constitutional provision would not fully accomplish its intent. The general prohibition agáinst laying duties op.
 
 *582
 
 imports or exports would have been ineffectual if it had not been extended to duties ou the. ships which serve as the .vehicles of convej-anee. This extension was doubtless intended by the prohibition of any duty on tonnage. It was not only a pro rata tax which was prohibited, but any duty on the ship, whether a fixed sum upon its whole tonnage, or a sum to be ascertained by comparing the amount of tonnage with the rate of. duty.” The other two eases fully sustain the proposition as we have stated.it.
 

 . In saying this we do not understand that this principle interposes any hindrance to the recovery, from any vessel landing at a wharf or pier owned by an individual or by a municipal or other corporation, a just compensation for the use of such property. It is a doctrine too well settled, and a practice too common and too essential to the interests of commerce and navigation to admit of a doubt, that for the use of such structures, erected by
 
 individual
 
 enterprise, and recognized everywhere as private property, a reasonable compensation can be exacted. And it may be safely admitted also that it is within the'power of the State to regulate this compensation, so as to prevent extortion, a power which is often very properly delegated to the local municipal authority.
 

 Nor do we see any reason why, when a city of other municipality is the owner of such structures, built by its own money, to assist vessels landing within its limits in the pursuit of their business,.the city should not be allowed to exact and receive this reasonable compensation as well as individuals. But in the exercise of this right care must be had that it is not made to cover a violation of the Federal Constitution in the point under consideration.
 

 We are better satisfied with this construction of the Constitution from the fact that this is one of the few limitations of that instrument on the' power of the States which is not absolute, but which may be removed wholly or modified by the consent of Congress.
 

 The cases which have recently come before this court in which the State by itself or by one of its municipalities has
 
 *583
 
 attempted to levy taxes of this character, clearly within the letter and the spirit of the constitutional prohibition, show the necessity of a rigid adherence to the demands of that instrument. If hardships arise in the enforcement of this principle, and the just necessities of a local commerce require a tax which is otherwise forbidden, it is presumed that ■Congress would not withhold its assent if properly informed and its consent requested.
 

 This is a much wiser course, and Congress is a much safer depositary of the final exercise of this important power than the ill-regulated and overtaxed towns and cities, which are not likely to look much beyond their own needs and their own interests;
 

 We are of opinion that the ordinance under which the levee dues were assessed upon the plaintiff’s vessel is unconstitutional and vojd.
 

 Judgment reversed, and the case remanded to the Supreme Court of Louisiana for further proceedings,
 

 In conformity to this opinion.
 

 *
 

 6 Wallace, 31.
 

 †
 

 12 Id. 212.
 

 ‡
 

 19 Id, 581.