## PACKET COMPANY v. ST. LOUIS.

1. A municipal corporation, owning improved wharves and other artificial means which it maintains, at its own cost, for the benefit of those engaged in com merce upon the public navigable waters of the United States, is not prohib ited by the Constitution of the United States from charging and collecting from parties using its wharves and facilities such reasonable fees as will fairly remunerate it for the use of the property.

2. *Packet Company* v. *Keokuk* (95 U. S. 80) affirmed.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

The facts are stated in the opinion of the court.

*Mr. James H. Davidson,* for the plaintiff in error.
*Mr. Leverett Bell, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiff in error is a corporation of the State of Iowa, and, during the years 1870, 1871, and up to March 28, 1872, was engaged with steamboats and barges of which it was the owner, in the business of commerce and navigation on the Mississippi River, between ports and places in different States. Its steamboats and barges, in the course of such business, landed at St. Louis, and, during the period named, it paid to that city, upon the demand of its constituted authorities, large sums of money, amounting in the aggregate to $6,571.35. These sums were exacted as wharfage dues, in virtue of certain ordinances of the city, one of which was entitled "An ordinance establishing and regulating the harbor department," and the other, "An ordinance to reduce the rate of wharfage in the city of St. Louis."

The authority of the city to collect these fees is referred to sect. 30 of the ordinance first named, which is as follows: —

"There shall be collected from each and every boat, of whatever kind or description, . . . for each and every time the same shall come within the harbor of said city, and land at any wharf or land-ing, or be made fast thereto, or to any boat thereto fastened, or shall receive or discharge any freight or passengers in this city, or shall tow coal or any other article in the harbor, seven and one-

half cents for each ton of said boat's burden, by custom-house measurement, as wharfage dues. If the boat have no custom-house measurement, or if the harbor-master be not satisfied as to the correctness of said boat's custom-house measurement, he is hereby empowered and directed to ascertain the tonnage of said boat by measurement, according to the rules and regulations of the United States in the measurement of boats and wharfage shall be collected according to such measurement : *Provided,* that any boat making regular daily, semi-weekly, tri-weekly, or weekly trips, or is engaged in the business of towing, and ferry-boats, may pay wharfage dues at a different or special rate, as may be provided by this ordinance."

The payments in question were made by the company whenever demanded, but always under protest, and without waiving any right it had to recover the same from the city by an action at law.

This action was instituted to compel the repayment of the sums thus collected, upon the ground that the ordinances in question, and particularly the section above quoted, was in conflict, 1st, with the clause prohibiting any State, without the consent of Congress, from laying any duty of tonnage ; 2d, with the clause which declares that " no tax or duty shall be laid on articles exported from any State ; no preference shall be given any regulation of commerce or revenue to the ports of any one State over those of another ; nor shall any vessels bound to or from one State be obliged to enter, clear, or pay duties in another ; " 3d, with the clause conferring upon Congress the right to regulate commerce with foreign nations, among the several States, and with the Indian tribes ; 4th, with the " Treaty of Paris, 1783," which declares that " the navigation of the river Mississippi, from its source to the ocean, shall for ever remain free and open to the subjects of Great Britai1 and the citizens of the United States ; " 5th, with the Treaty of Spain, concluded Oct. 27, 1795, which declares : " . . . And his Catholic Majesty has likewise agreed that the navigation of the said river, in its whole breadth, from its source to the ocean, shall be free only to his subjects and the citizens of the United States ; " 6th, with the ordinance of 1787, which, among other things, provides " that the

navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and for ever free, as well to the inhabitants of the said territory as to the citizens of the United States, that may be admitted into the confederacy, without any tax, impost, or duty therefor."

The court below, the circuit and district judges concurring, was of opinion that the plaintiff in error was legally bound to pay the sums so exacted and paid as wharfage fees, under the ordinances to which we have referred. Judgment was, accordingly, given for the city. Whether the facts set forth in the special finding are sufficient to sustain the judgment is the controlling question arising upon this writ of error.

The elaborate argument of counsel for the company is directed to the support of the first, second, and third of the foregoing propositions. He withholds any suggestion or argument in support of the remaining propositions, for the obvious reason, as we suppose, that the case must fail altogether unless the plaintiff in error can successfully maintain the invalidity of the ordinances, under some one or more of the constitutional provisions by him cited. If the particular section of the ordinance, by virtue of which these collections were made, is not in conflict with the Federal Constitution, there would be no ground whatever for holding that it was inconsistent with either of the treaties referred to, or with the ordinance of 1787. We will, therefore, only consider whether the city of St. Louis was inhibited by any provision of the Federal Constitution from charging and collecting the fees, to enforce the repayment of which is the object of this action.

By the charter of the city, its mayor and council were invested with authority to regulate the stationing, anchoring, and mooring of vessels, within the city, and to charge and collect wharfage on fire-wood, lumber, logs, &c., brought to the port of St. Louis. The council was also required, from time to time, to provide, by ordinance, for the levy and collection of taxes, licenses, wharfage, and other dues, under penalty for neglect or refusal to pay the same; also, for maintaining the permanency of and improving the wharf and harbor, and for opening and extending the wharf, applying, in its discretion,

all the net receipts from wharfage to the credit of the wharf funds.

Under the authority thus conferred, the city passed the ordinance regulating and establishing its harbor department and prescribing the duties of the harbor-master.

By that ordinance it is declared that the harbor of the city comprises the bed of the Mississippi River, its channels, sloughs, bayous, bars, and islands, from the mouth of the Missouri River to the southern boundary of the city. The jurisdiction of the harbor-master is made to extend over all the lands, river bank, and beach dedicated, condemned, occupied, or used for wharf purposes, within the city, and over so much of the Mississippi River, and to the middle of the main channel thereof as lies immediately in front of the city, over which the city has control.

It is made his duty to direct the landing and stationing of all water-craft arriving at any point within the limits of the city, and to direct the discharge and removal of their cargoes, so as to prevent interference between different vessels and their cargoes; to superintend the arrangement of freight, merchandise, and materials for repairs in the river bank, so that the same shall occupy as little space as possible; to see that all combustible materials on the landing are sufficiently protected from fire; to keep the wharf and the river along the shore free from improper obstructions; to keep in repair the ring-bolts provided for fastening vessels; to regulate and control by proper rules to be established and published, all vehicles traversing the wharf or landing, and to remove thence such as unnecessarily obstruct free passage upon said wharf or landing, and generally to exercise complete supervision and control over the wharf, river bank, landing and Front Street.

It is also made his duty, under the direction of the mayor to provide, at the expense of the city, whenever the same shall be deemed necessary, suitable posts and ring-bolts for boats and rafts to make fast to and keep the same in repair; also to extend the steamboat landing, north and south, as soon as the wharf was made suitable for the landing of merchandise, and the depth of the water shall justify, so as to give room required by boats for the handling, receiving, and discharging of freight,

and for the free passage of drays and other vehicles, and to designate the boundary of each class of boats, according to the wants of different trades at the time of such extension.

The duties thus imposed upon the harbor-master, if faithfully discharged, must, it will be conceded, materially advance, and not obstruct or burden trade and business on the Mississippi River, especially at the port of St. Louis. Services rendered by him in the execution of those duties would be in aid, and not a hinderance, of commerce and navigation. Besides, as the special finding discloses, the city acquired, at its own expense, and owns the property within its limits along the west bank of the Mississippi River, and for the purposes of a wharf has improved, paved, and maintains in repair, at its own cost, one and a half miles of the same at an enormous expense. That wharf was used by the plaintiff in error in conducting its business, at all stages of water, for the purpose of receiving and discharging freight, and for the convenience of passengers in getting on and off its boats. Its boats landed at and used only the improved wharf. And it is found as a fact in the case that the fees demanded from and paid by the company, under the city ordinances, " were reasonable in amount, and a reasonable compensation for the use of defendant's wharf, if defendant (the city) was entitled to collect any sums whatever under said ordinance."

From this analysis of the special finding and the ordinance establishing and regulating the harbor department of St. Louis, it is not difficult to apprehend the nature and scope of the question before us. Briefly stated, it is whether a municipal corporation, owning improved wharves and other artificial means which it has provided and maintains, at its own cost, for the benefit of those engaged in commerce upon the public navigable waters of the United States, is prohibited by the national Constitution from charging and collecting from those using its wharves and facilities, such reasonable fees as will fairly remunerate it for the use of its property?

This precise question has heretofore received careful consideration by this court, and we recognize nothing in this case which has not been concluded by former adjudications, or which requires extended discussion.

In *Cannon* v. *New Orleans* (20 Wall. 577), upon writ of error to the Supreme Court of Louisiana, we had occasion to consider the constitutional validity of an ordinance of the city of New Orleans, whereby " levee and wharfage dues" were imposed upon steamboats. mooring or landing " in any part of the port" of that city, the amount of such duties to be determined, at a fixed rate, by the tonnage of such vessels. That case is relied upon here as sustaining the ground upon which the plaintiff in error assails the validity of the ordinance passed by the municipal authorities of St. Louis. We do not, however, assent to any such construction of our opinion in that case. It was in evidence there, that not more than one-tenth of the twenty miles and more of the levee and banks of the Mississippi, within the corporate limits of New Orleans, had any wharf, and that vessels often landed at various places, within the city, where no wharfage facilities existed. It does not appear from the opinion of the court, or from the reporter's statement of that case, where the landings of Cannon's steamer were actually made, whether at the improved wharf of the city, or at points where no wharf accommodations were furnished for the use of vessels. We, therefore, held, that the ordinance, interpreted in the light of the admitted condition of the river and its banks within the city, imposed a duty of tonnage for the mere privilege of stopping, mooring, or landing at the port of New Orleans, and that the charges exacted could not, in view of the special circumstances disclosed by the evidence, be regarded or supported, as compensation simply for the use of the city's wharves. But we there expressly recognized, as essential to the interests of commerce and navigation, and as entirely consistent with the provisions of the national Constitution, the right of a municipal corporation, thereunto authorized by the State which created it, to demand from those engaged in commerce just compensation for the use of wharves, or other artificial facilities, provided and maintained at its expense.

That such was the import of our decision in *Cannon* v. *New Orleans* is shown in the recent case of *Packet Company* v. *Keokuk* (95 U. S. 80), where the question under consideration was again and very fully examined in connection with an ordinance of Keokuk, which, in its main features, is like that now under

examination.  By the Keokuk ordinance wharfage fees were charged whenever a steamboat should make fast to any part of the wharf of that city, or to any vessel, or other thing at or upon said wharf, or should receive or discharge any passengers or freight thereon, or should use any part of the wharf for the purpose of discharging, receiving, or landing any freight or passenger — the fees, in such cases, to be measured by the tonnage of the boat using the wharf.  The unanimous judgment of the court was that the Keokuk ordinance was not repugnant to the Constitution of the United States — that the wharfage fees collectible thereunder were by way of compensation to the city for the use of its property, and were not duties, taxes, or burdens for the mere privilege of entering the port of Keokuk, or remaining in it, or departing from it.

We need not repeat the reasons there given for the distinction between tonnage duties, which the States are prohibited from levying without the consent of Congress, and wharfage dues, properly so called, imposed in good faith, and to the extent only of fair remuneration for wharf accommodations furnished for the convenience of trade and commerce.  We adhere to the doctrines announced in that case.  They are decisive of the present one.  The sums paid by the plaintiff in error were exacted and paid as compensation for the use of an improved wharf and not for the mere privilege of entering or stopping at the port of St. Louis, or for landing at the shore, in its natural condition, where there were no conveniences which could be called a wharf.  The amount paid is conceded to have been just and reasonable compensation for vessels and barges such as those owned by the plaintiff in error.  It was not out of proportion to the advantages and benefits enjoyed in the use of the improved wharf.  The one was a fair equivalent for the other.  Nor is there any ground whatever to suppose that these wharfage fees were exacted for the purpose of increasing the general revenue of the city beyond what was necessary to meet its outlay, from time to time, in maintaining its wharves in such condition as the immense business and trade of that locality required.  We are not at liberty, from any thing disclosed by the record, to suppose that the city intended its ordinance as a mere cover for laying

duties of tonnage within the meaning of the Federal Constitution.

What has been said renders it unnecessary to consider any other question presented in argument.

To avoid misapprehension, it is, perhaps, well to say that we express no opinion as to the validity of any of the provisions of the city charter or ordinances except such as have direct reference to the case before us. We restrict our decision to the single point that the city was not prohibited by the Federal Constitution from collecting the wharfage fees in question as reasonable compensation for the use of its wharves by the plaintiff in error.

*Judgment affirmed.*