## LEATHERS *v.* AIKEN, Adm'x.[*]

*(Circuit Court, E. D. Louisiana. December 21, 1881.)*

1. CONSTITUTIONAL LAW—WHARFAGE TAX—PROHIBITION ON MUNICIPAL CORPO-
RATIONS.

A municipal corporation cannot exact a charge upon vessels for entering or leaving a port, or remaining therein, nor levy a tax on vessels and water-craft entering its port, and using the wharves and landings, for the general revenue of such corporation.

*Cannon* v. *New Orleans,* 20 Wall. 577.

*Packet Company* v. *Keokuk,* 95 U. S. 80.

2. SAME—SAME—POWER OF MUNICIPAL CORPORATION.

A municipal corporation, owning improved wharves and other artificial means, which it maintains at its own cost, for the benefit of those engaged in commerce upon the public navigable waters of the United States, may charge and collect, from parties using its wharves, such reasonable fee as will fairly remunerate it for the use of its property.

*Packet Company* v. *St. Louis,* 100 U. S. 423.

*Vicksburgh* v. *Tobin,* Id. 430

In Equity.

*Chas. S. Rice,* for complainant.

*W. S. Benedict* and *Geo. Denegre,* for defendant.

PARDEE, C. J. This case has been submitted on the bill, answer, and affidavits, and under a rule *nisi,* to determine whether an injunction, pending the suit, should issue. The evidence and arguments offered cover a very wide range, but the facts it is necessary to consider in reaching a decision can be succinctly stated as follows:

(1) The complainant is the owner and manager of certain steam-boats, making weekly trips to the port of New Orleans, landing, tying up, loading, and unloading at the artificial wharves and levees belonging to said city.

(2) The city of New Orleans, by ordinance and contract, has fixed the rate of charges for the use of the wharves and levees according to the tonnage of the steam-boats using them, and has farmed out to the defendant, Aiken, the revenues derived therefrom for all the space lying in front of the first, second, third, and fourth municipal districts of the city, excepting therefrom such portions as have been leased or granted to other parties for private or exclusive use—this exception covering over one-fourth of the front of said four districts.

(3) The defendant, Aiken, in consideration of this grant, undertakes to keep all of said wharves and levees—except private or exclusive wharves—in good condition, making repairs according to certain specifications, to build certain new wharves and bulk-heads when ordered, also, according to specifications, to light the whole front of said districts with the electric light, and, in addition, to pay to the city of New Orleans, in monthly instalments, $40,000 per year, $30,000 of which is to be devoted to the payment and maintenance of a harbor

*Reported by J. P. Hornor, Esq., of the New Orleans bar.

police for the protection of commerce, etc., along the river front of the city, and the remaining $10,000 to be set apart and devoted exclusively to the payment of the salaries of wharfingers, collection clerks, signal officers, and other employes on levees in connection with the department of commerce of said city; and many other minor matters and stipulations are provided for and agreed to.

(4) The total cost of the wharves and landings to the city of New Orleans, December 31, 1874, and for which its bonds were outstanding, was $1,044,000, and up to May 1, 1875, the city had expended for wharves and landings, in excess of all receipts for use thereof, $836,635. During the lease to Eager, Ellerman & Co., from July 1, 1876, to May 29, 1881, the said indebtedness was liquidated and paid at reduced rates, and the wharves kept in certain repair, from the revenues, which, at the rates then fixed, yielded about $230,000 annually. The rates fixed by the contract with defendant are the same as in the contract with Eager, Ellerman & Co., except a decided reduction on ocean vessels, and a promised reduction on all shipping of 10 per cent. during the third year, and 20 per cent. during the fourth and fifth years of the contract; and under this contract the revenues will be about $200,000 per year.

(5) The nature of the climate, and the currents and banks of the river in front of the city of New Orleans, necessarily render all wharves and levees perishable, requiring for them constant rebuilding and repairing.

The complainant attacks this lease or contract to defendant as being in violation of the constitution of the United States, to-wit: Article 1, § 10, forbidding any state, without consent of congress, from laying any duty on tonnage. Article 1, § 8, granting to congress the power and authority to regulate commerce with foreign nations and among the several states and with the Indian tribes. Article 1, § 10, forbidding any state, without the consent of congress, to lay any import or export duties, except what may be absolutely necessary for executing its inspection laws. Article 1, § 9, no tax or duty shall be laid on articles exported from any state.

He also attacks it as being in violation of the act of congress, approved April 8, 1812, admitting Louisiana into the Union.

He further claims that the rates of wharfage charges or dues under the lease and ordinance are excessive and unjust, nearly double the amount required to keep the wharves in repair and make such new constructions as the needs of commerce may require, and that the charges and dues authorized by the lease and ordinance amount really to a disguised tax or duty on tonnage for the purpose of maintaining electric lights, a police force on the levees, and one department of the city government, all of which, if required at all, should be supported by the general public, and not burdened on commerce.

Such being the substantial facts and the allegations of the bill, raising a question under the constitution of the United States, there can be no doubt of the jurisdiction of the court.

The case may be further simplified by leaving out of consideration the circumstances attendant upon the advertisement and adjudication of the contract or lease, the matter before this court being in essence

the same as though the defendant, Aiken, were not interposed; and the city of New Orleans, through its council, had simply passed an ordinance fixing the rate of wharfage dues, and directed in the same ordinance the disposition of the fund collected.

And now we have only to determine whether such an ordinance, with the rates as fixed, is obnoxious to the constitution and laws of the United States.

The authorities so fully cited in this case show exactly what a municipal corporation may exact from ships and water-craft landing at the wharves and landings constructed or owned by the corporation for the use and accommodation of such ships and water-craft. It cannot exact a charge for entering or leaving the port, or remaining therein. *Cannon* v. *New Orleans*, 20 Wall. 577; *Alexander* v. *Railroad Co.* 3 Strobhart, 594. It cannot levy a tax on vessels and water-craft entering its port and using the wharves and landings, for the benefit of the general revenue of such corporation. *Packet Co.* v. *Keokuk*, 95 U. S. 80; *Packet Co.* v. *St. Louis*, 4 Dill. 10. But a municipal corporation owning improved wharves and other artificial means, which it maintains at its own cost for the benefit of those engaged in commerce upon the public navigable waters of the United States, may charge and collect from parties using its wharves such reasonable fees as will fairly remunerate it for the use of its property. *Packet Co.* v. *St. Louis*, 100 U. S. 423; *Vicksburg* v. *Tobin*, Id. 430; *Packet Co.* v. *Keokuk*, *supra*; *Cannon* v. *New Orleans*, *supra*; *Packet Co.* v *St. Louis*, *supra*.

That such fees are regulated by the tonnage of the vessel will not constitute them a tonnage tax in the meaning of paragraph 3, § 10, of art. 1, constitution of the United States. *Packet Co.* v. *Keokuk*, *supra*; *Johnson* v. *Drummond*, 20 Gratt. 419.

From these propositions, so well sustained by authority, the following are legitimate corollaries:

No charges can be made on vessels landing at wharves of a municipal corporation for facilities not furnished.

The commerce of this year cannot be taxed to furnish facilities for the next year.

It is immaterial what disposition is made of the funds collected, except as showing what the collection is based on.

No charges can be made on the promise to furnish facilities to commerce.

Applying these propositions and principles to the case under consideration, what do we find? The complainant, with his boats, uses the wharves and levees, between Girod and St. Louis streets, on the

river front of the city of New Orleans, where the same are in undisputed good order and repair. By the ordinance he is required to pay for this use 10 cents per ton of his boats for each landing. Is this a reasonable charge for the accommodations furnished? If it is reasonable it is no tax on commerce, no matter what may be done with the moneys so collected. The complainant cannot litigate for the rights of others. If wharves other than those used by complainant are in bad order, it is no concern of complainant, except as he may be a public-spirited citizen.

It is shown that complainant uses the best and most eligible wharves in the city front, and that the rates as applied to those particular wharves are very low, the complainant having offered the city, for the exclusive use of those wharves, to pay the rates and yet build and maintain them at his own cost. But to determine whether this charge against complainant is reasonable, regard must be had to the whole system of wharves and levees for the city, as no just result can be obtained by taking any one favored point and basing the issue upon that.

The evidence offered herein shows that the total cost of the wharves now existing is largely over $1,000,000; that by reason of the climate, the nature of the banks, and the uncertain currents of the river, constant watching and repairing and rebuilding are necessary; that by the rates as fixed in the present ordinance the revenues will amount to about $200,000 per year, or about one-fifth of the total cost of the constructions; that the present charges are and are to be a little less than the charges were for the five years preceding this present rate, and that in the course of years the rates have been reduced 50 per cent. on the class of boats used by complainant, and it seems the rates compare favorably with those of other cities on the river. Now, under this showing, this court cannot say that these rates are not reasonable, bearing in mind that just and reasonable compensation for the use of property must be something more than the mere sum necessary to keep the property in repair.

As I have shown that the complainant has no legal concern as to how the reasonable compensation he pays for the use of wharves is expended, it is not really necessary to consider the charge that the defendant's contract and lease is an attempt to levy a tonnage tax, under the guise of wharfage dues, to support a harbor police, pay wharfingers, etc., and maintain an electric-light system on the. wharves. However, I will say that every one interested in the wel-

fare of New Orleans—which city is so dependent on commerce—should be gratified to find that the money that the city has the legal right to exact from commerce for facilities furnished is to be devoted to the furnishing of still further facilities and increased protection. There can be no doubt that on such a busy levee as that of New Orleans, wharfingers, signal officers, etc., and a police force, are necessary for the benefit of commerce, and without which all would be turmoil and confusion.

As for the electric-light system, while opinions may vary as to its success and usefulness, the city has a right to try it in place of other lights, and it is to be hoped the experiment will be successful. That the complainant does not load or unload at the wharves at night, and therefore does not want any light there, can furnish no rule as to other parties who may desire to use the wharves at night. That the whole levee is to be lighted, and perhaps the river and city get a share, is also a vain objection.

Under the conclusions reached, the application for injunction must be denied, and the outstanding restraining order be dissolved. And it is so ordered.