### OUACHITA & MISSISSIPPI RIVER PACKET Co. *v.* AIKEN, Adm'x, etc., and others.*

*(Circuit Court, E. D. Louisiana. May 31, 1883.)*

1. JURISDICTION OF CIRCUIT COURT—CITIZENSHIP—ACT OF 1875.

   Where all of the defendants are citizens of the state where suit is brought, and of the complainants some are citizens of that state and some are citizens of other states, the jurisdiction of the circuit court over the case cannot rest upon the citizenship of the parties.

2. CONSTITUTIONAL LAW—WHARFAGE—TONNAGE.

   The exaction of wharfage is not the laying of a duty of tonnage, and where an ordinance requires steam-boats and other water-craft to pay for the use of the wharfs, and no demand is made for entering, loading, or lying in the harbor or port, such charges will not be considered as a duty of tonnage, but as wharfage.

3. SAME—REGULATION OF COMMERCE—POWER OF STATES.

   State action upon such subjects as are not national, but local, and limited in their nature, such as harbor pilotage, beacons, buoys, etc., can constitute no interference with the commercial power of congress, for when congress acts the state authority is suspended. Inaction of congress upon subjects of a local nature or operation is not to be taken as a declaration that nothing should be done with respect to them, but is rather to be deemed a declaration that, for the time being, until it sees fit to act, they may be regulated by state authority.

*Affirmed. See 7 Sup. Ct. Rep. 907.

4. SAME—WHARFAGE—REASONABLENESS OF CHARGE.

 No subject can be more properly classified as local in its nature, and as requiring the application of town regulations, than that of wharfs and wharfage; and as no act of congress has been passed for the regulation of wharfage, and there is nothing in the constitution to prevent the states from regulating it, so long as congress sees fit to abstain from action on the subject, it is entirely within the domain and subject to the operation of state laws, and the reasonableness of the charge must be determined by the local law.

In Equity. Heard upon pleadings and evidence for final decree.

*Kennard, Howe & Prentiss* and *C. S. Rice,* for complainants.

*W. S. Benedict* and *Bayne & Denegre,* for defendants.

Before Woods and Pardee, JJ.

Woods, Justice. This was a bill in equity, filed by the Ouachita & Mississippi River Packet Company, a corporation of and citizen of the state of Kentucky, and certain persons, citizens of the states of Ohio, West Virginia, and Louisiana, respectively, against the defendants, as partners under the firm name of Joseph A. Aiken & Co., and against the city of New Orleans, all the defendants being citizens of the state of Louisiana, to restrain the collection of wharfage dues. It appears from the pleadings and evidence that under an act of the legislature of Louisiana the city of New Orleans, being empowered to collect wharfage for the use of its wharves on the Mississippi river within its limits, on May 17, 1881, adopted an ordinance providing for the building and repairing of the wharves and levees of the city of New Orleans, and for farming the revenues thereof. In pursuance of said ordinance the city made a contract with Joseph A. Aiken, by which he was authorized, for the term of five years, to collect wharfage for all steam-boats and other water-craft landing at the wharves of said city, the rates of wharfage being fixed by an ordinance of the city. On his part, Aiken agreed to accept the wharves in the condition in which they were on May 21, 1881, and to repair and keep them in good order and condition for said term of five years; to build certain additional new wharves, at an expense not exceeding $25,000; to build new revetments; to build a piled bulk-head in the Third district; to light a specified portion of the levees and wharves with electric lights; to pay $20,000 annually to maintain a harbor police for the protection of commerce along the river front of the city; and $10,000 to be applied to the salaries of wharfingers, etc. The ordinance and contract fixed the following, among other rates of wharfage, which Aiken and his associates were permitted to charge: For steam-boats—

"Not over five days, 10 cents per ton, and each day thereafter $5 per day; for boats arriving and departing more than once a week, 5 cents per ton each trip; boats lying up for repairs during the summer months to occupy such wharves as may not be required for shipping, for twenty days or under, $1 per day."

The contract and ordinance further provided that for the third year of said lease Aiken should reduce the wharfage on steam-boats and other licensed vessels employed in transporting merchandise on the Mississippi river 10 per cent., and for the fourth and fifth years 20 per cent., etc. The bill charged that the ordinance and contract were null and void, because rates of wharfage were unreasonable, excessive, and unjust; and that the revenues derived from wharfage were used in part to pay the salaries of the public police of the city of New Orleans, and the salaries of officers belonging to the office of the department of commerce of said city, and for the building of new wharves and other new structures; that said exactions of wharfage were in violation of the constitution of the United States, because they were the laying of a duty of tonnage without the consent of congress, and were a regulation of commerce with foreign nations and among the several states. The prayer of the bill was for an injunction to restrain the defendants from demanding or collecting said wharfage dues, and that said ordinances of the city of New Orleans and said contract with the defendants might be declared illegal, unconstitutional, and void. All the defendants are citizens of the state of Louisiana. Of the complainants, some are citizens of the state of Louisiana, and some are citizens of other states. It is, therefore, obvious that the jurisdiction of this court over the case cannot rest upon the citizenship of the parties. Act of March 3, 1875, to determine the jurisdiction of circuit courts of the United States, etc.; *Removal Cases*, 100 U. S. 457.

The case is, therefore, in respect to citizenship, precisely in the same plight as if all the parties were citizens of the state of Louisiana, and in this respect it is similar to the case of *Parkersburg, etc., Transp. Co.* v. *City of Parkersburg*, decided by the supreme court at the last term, [2 Sup. Ct. Rep. 732,] where both the complainant and the defendants were citizens of the state of West Virginia. An examination of that case will show that none of the grounds upon which the collection of wharfage in this case is complained of can be maintained.

The exaction of wharfage is not the laying of a duty of tonnage. The ordinance and contract complained of in this case impose charges

for wharfage only; that is to say, the steam-boats and other water-craft from which wharfage is collected are required to pay only for the use of the wharves.   No demand is made of them for entering, loading, or lying in the port or harbor.   This court cannot, therefore, entertain an averment that the charges were not intended as wharf-age, but as a duty of tonnage.   Whether they are one or the other must be determined by the ordinance and the contract.   The fact that the wharfage exacted may be unreasonable and exorbitant does not change its character.   It is still wharfage, and nothing else. This court cannot, therefore, grant relief on the assumption that the exaction of wharfage is the laying of a duty on tonnage without the consent of congress.   Neither can we base relief on the theory that the ordinance and contract complained of constitute a regulation of commerce in derogation of the exclusive power of congress over that subject.   In the case of *County of Mobile* v. *Kimball*, 102 U. S. 691, it was held by the supreme court that state action upon such sub-jects—those which are not national, but local and limited in their nature, such as harbor pilotage, beacons, buoys, etc.—can constitute no interference with the commercial power of congress, for when con-gress acts the state authority is suspended.   Inaction of congress upon these subjects of a local nature or operation, unlike its inac-tion upon matters affecting all the states and requiring uniformity of regulation, is not to be taken as a declaration that nothing should be done with respect to them, but is rather to be deemed a declaration that for the time being, and until it sees fit to act, they may be reg-ulated by state authority.   So, in the case of *Parkersburg, etc., Transp. Co.* v. *City of Parkersburg, supra,* the same court declared:

"It is manifest that no subject can be more properly classified as local in its nature, and as requiring the application of town regulations, than that of wharves and wharfage."

And in the same case it was further said:

"As no act of congress has been passed for the regulation of wharfage, and as there is nothing in the constitution to prevent the states from regulating it, so long as congress sees fit to abstain from action on this subject, our con-clusion is that it is entirely within the domain and subject to the operation of state laws."

But complainants contend that the wharfage exacted by defendants is exorbitant and unreasonable, and therefore this court has jurisdic-tion to interfere.   But it is manifest that if the matter of wharfage can without any infringement of the constitution be regulated by local law, the question whether the wharfage dues demanded are or are not

reasonable must be determined by that law. It would be absurd to say that as long as congress did not act the matter òf wharfage might be properly regulated by the states, and then, without any action by congress, to hold that the courts might abrogate the state laws on the subject. It was, therefore, declared, in the case of *Parkersburg, etc., Transp. Co.* v. *City of Parkersburg,* that "the reasonableness of wharfage must be determined by the local law until some paramount law has been prescribed."

We have, therefore, no ground upon which to interfere with the local regulation of wharfage, which is attacked in this case. The defendants are authorized by the local law to charge certain rates of wharfage, and there is 'no averment or proof that these rates have been exceeded. The defendants are, therefore, protected by the local law in the matters of which complaint is made against them in the bill; and that local law is not in violation of any provision of the constitution of the United States, or in contravention of any act of congress.

All the other grounds of relief set out in the bill resolve themselves into complaints of the excessive and exorbitant rates of wharfage.

There is, therefore, no averment in the bill which can be the basis of the relief prayed for. We may remark, however, that the exactions of wharfage are substantially expended for the benefit of those using the wharves, and that the proof does not satisfy us that the rates are exorbitant or excessive. The result is that the bill must be dismissed at the cost of complainants, and it is so ordered.

PARDEE, J., concurred.

1. WHARFAGE NOT DUTY OF TONNAGE. When the constitution of the United States declares that "no state shall, without the consent of congress, lay any duty of tonnage," and when congress, in section 4220 of the Revised Statutes, declares that "no vessel belonging to any citizen of the United States, trading from one port within the United States to another port within the United States, or employed in the bank, whale, or other fisheries shall be subject to tonnage tax or duty, if such vessel be licensed, registered, or enrolled," they mean by the phrases "duty of tonnage," and "tonnage tax or duty," a charge, tax, or duty on a vessel for the privilege of entering a port.(a) A state law or municipal ordinance which requires every vessel *arriving* at the quarantine station of any town on the coast of the state to pay five dollars for the first hundred tons and one and a half cents for each additional ton;(b) or

(a) Parkersburg & O. R. Transp. Co. v. City of Parkersburg, 2 Sup. Ct. Rep. 738.

(b) Peete v. Morgan, 19 Wall. 581.

which requires all vessels of a certain class which *enter* a certain port, or unload or load, or make fast to any wharf therein, to pay a certain rate per ton;(*c*) or authorizes port-wardens to demand and receive a certain sum from every vessel arriving in the port, whether called on to perform any service or not;(*d*) or imposes levee duties on all steam-vessels which shall moor or land in any part of the port,(*e*)—imposes a duty of tonnage, and is unconstitutional and void.

Wharfage is a charge against a vessel for using or lying at a wharf or landing,—a rent charged by the owner of the property for its temporary use;(*f*) and the mode of rating the charge, whether according to the size or tonnage of the vessel, or otherwise, has nothing to do with its nature.(*g*) Whether a charge imposed is a charge of wharfage or a duty of tonnage must be determined by the terms of the ordinance or regulation which imposes it.(*h*) The question whether it is one or the other is not one of intent, but one of fact and of law; of fact, as whether the charge is made for the use of a wharf or for entering a port; of law, as whether, according as the fact is shown to exist, it is wharfage or a duty of tonnage.(*i*)

2. MUNICIPAL CORPORATIONS—CHARGING WHARFAGE. That a municipal corporation owning improved wharves and other artificial means, which it maintains at its own cost for the benefit of those engaged in commerce upon the navigable waters of the United States, may charge and collect from parties using its wharves such reasonable fees as will fairly remunerate it for the use of its property, is well settled.(*j*) The right to collect wharfage is a franchise, and depends upon a grant from the sovereign power, and, being in derogation of common right, the municipality claiming it must show a plain legislative grant of such franchise.(*k*) Mr. DILLON classes the power to erect wharves and charge wharfage among " the powers of a special and extra-municipal nature," and in this he is fully sustained by the adjudged cases.(*l*) Except by express legislative authority public wharves of a city are no more liable to wharfage than any one of the streets of a city are subject to toll,(*m*) and while the authorities of a city may erect wharves at the *termini* of their streets suitable for landings, such erections become free to the public as extensions of the streets, and the city has no authority to exact toll for ingress or egress.(*n*) Where, however, a municipal corporation is a riparian proprietor, its right to charge wharfage is recognized.(*o*)

(*c*) Inman Steam-ship Co. v. Tinker, 94 U. S. 328.

(*d*) Steam-ship Co. v. Port-wardens, 6 Wall. 31

(*e*) Cannon v. City of New Orleans, 20 Wall. 577; Alexander v. Railroad Co. 3 Strobh. 594.

(*f*) Parkersburg & O. R. Transp. Co. v. City of Parkersburg, 2 Sup. Ct. Rep. 738.

(*g*) Cannon v. City of New Orleans, 20 Wall. 577; Packet Co. v. Keokuk, 95 U. S. 80; Packet Co. v. St. Louis, 100 U. S. 423; Guy v. Baltimore, Id 434; Packet Co. v. Catlettsburgh, 105 U. S. 559; Leathers v. Aiken, 9 Fed. Rep. 681.

(*h*) Parkersburg & O. R. Transp. Co. v. City of Parkersburg, 2 Sup. Ct. Rep. 735.

(*i*) Id. 736.

(*j*) Packet Co. v. St. Louis, 100 U. S. 423; Vicks-

burg v. Tobin, Id. 430; Packet Co. v. Keokuk, 95 U. S. 80; Cannon v. New Orleans, 20 Wall. 577; Leathers v. Aiken, 9 Fed. Rep. 681.

(*k*) Wiswell v. Hall, 3 Paige, 313; Walsh v. N. Y. Float Dry Dock Co. 77 N. Y. 452; St. Martinsville v. The Mary Lewis, 32 La. Ann. 1293-5; The Geneva, 16 Fed. Rep. 874; Town of Pelham v. The T. B. Woolsey, 16 Fed. Rep. 418.

(*l*) The Wharf Case, 3 Bland, Ch. 361; People v. Broadway Wharf Co. 31 Cal. 33; Dillon, Mun. Corp. § 67.

(*m*) The Wharf Case, 3 Bland, Ch. 384.

(*n*) The Empire State, 1 Newb. Adm. 541.

(*o*) Murphy v. City of Montgomery, 11 Ala. 586-589; Cannon v. New Orleans, 20 Wall. 577; Dillon, Mun. Corp. § 72.

3. PRIVATE WHARVES. That a private individual may construct and own, for his own use, a private wharf, even on a navigable river, is not now open to controversy.(p)  The general rule of law in reference to all public wharves, that wharfage must be reasonable, will not apply to such a wharf; for, if any other person than the owner wishes to make use of it for a temporary purpose, the parties are at liberty to make their own bargain.(q)  But whether a private wharf may be maintained as such, where it is the only facility of the kind in a particular port or harbor, may be questioned.(r)  Sir MATHEW HALE says: "If the king or subject have a public wharf into which all persons that come to that port must come and unlade or lade their goods, as for the purpose because they are the wharves only licensed by the king according to the statutes of 1 Eliz. c. 11, or because there is no other wharf in that port, as it may fall out where a port is newly erected, in that case there cannot be taken arbitrary and excessive duties for cranage, wharfage, pesage, etc. Neither can they be enhanced to an immoderate rate, but the duties must be reasonable and moderate, though settled by the king's license or charter."(s)

4. STATE LAW IMPOSING WHARFAGE MUST NOT DISCRIMINATE AGAINST CITIZENS OF OTHER STATES. While the states may regulate the rates of wharfage, and the reasonableness of the charge must be determined by the local law,(t) no state can, consistently with the federal constitution, impose upon the products of other states brought therein for sale or use, or upon citizens engaged in the sale thereof, or the transportation thereto of the products of other states, more onerous public burdens or taxes than it imposes upon the like products of its own territory,(u) and a law that authorizes a charge for wharfage in the case of certain boats coming from without the state, additional to that allowed to be made in the case of boats of the same character engaged exclusively in navigating waters within the state, is invalid as an unlawful taxation of interstate commerce.(v)

5. LIEN FOR WHARFAGE. The contract for wharfage is a maritime contract, for which, if the vessel or water-craft is a foreign one, or belongs to the port of a state other than that where the wharf is situated, a maritime lien arises against the ship or vessel in favor of the proprietor of the wharf for the payment of the reasonable and customary charges for the use of the wharf, and the same may be enforced by a proceeding *in rem* against the vessel, or by a suit *in personam* against the owner.(w)  But whether a lien by virtue of the general maritime law for wharfage furnished to a *domestic* vessel exists, or a libel *in rem* in admiralty can be brought against a vessel for wharfage, on the basis of a lien against the vessel, where such lien is created by a state statute, we believe has never been directly decided.(x).

*St. Paul, Minnesota,* July, 1883.  ·          ROBERTSON HOWARD.

(p) Dutton v. Strong, 1 Black, 23; Yates v. Milwaukee, 10 Wall. 497; Parkersburg & O. R. Transp. Co. v. City of Parkersburg, 2 Sup. Ct. Rep. 739.

(q) Parkersburg & O. R. Transp. Co. v. City of Parkersburg, 2 Sup. Ct. Rep. 739.

(r) Id.

(s) Harg. Law. Tr. 77.

(t) Ouachita, etc., Pkt. Co. v. Aiken, *ante,* 890.

(u) Guy v. Mayor, etc., of Baltimore, 100 U. S. 434.

(v) Broeck v. The John M. Welch, 2 Fed. Rep. 364.

(w) Ex parte Easton, 95 U. S. 68; Broeck v. The John M. Welch, 2 Fed. Rep. 371.

(x) The Bob Connell, 25 Int. Rev. Rec. 101. Broeck v. The John M. Welch, 2 Fed. Rep. 373.