Nott, Ch. J.,
delivered tbe opinion of the court:
The defendants, by their proper agent, an officer of engineers, in the spring of 1887, entered upon and for ten years used and occupied a dock or wharf in the city of Buffalo for ordinary wharfage purposes, the mooring of vessels, and loading and unloading of cargoes, and storage of materials. The defendants entered under a license from the superintendent of canals of the State of New York, and in ignorance of the fact that the claimant was the owner of the property. The petition ivas not filed until July 9, 1897, so that four years of the claim are barred by the statute of limitations. No question of estoppel or ultra vires arises in the case, for the claimant promptly notified the officer of her title to the property and her right to compensation, and the action of the officer and the continued use of the property was ratified and approved by the War Department through the Chief of Engineers. The defendants have never recognized the claimant as owner of the property, or acknowledged her right to receive compensation for its use and occupation.
From the decisions of the Supreme Court it may be deduced at the present time that the law relating to the occupation of real property by the Government concerning which an individual asserts a title is as follows:
1. An action will not lie against the United States where their officers enter upou property under a claim of legal right. 2. An action in ejectment will lie against the. officer in possession, and a judgment may be recovered against him, though it will not bind the Government, nor fix the amount of the compensation which should be paid. (Johnson Island Case, 31 C. Cls. R., 262.) In this case the defendants did not enter under a claim of legal right, but under an adverse title; and if this were an ordinary action for the use and occupation of realty, the court might hold that the able defense made by their counsel should be sustained. To maintain an action for use and occupation, the relation of landlord and tenant (express or implied) must exist.
But wharves are a peculiar kind of property which, though standing upon terra firma, are so far marine in their uses and purposes as to come within admiralty j urisdiction. In England it is generally held that they may extend to low-water mark. In this country, with the extending of admiralty jurisdiction to *231 our inland seas and navigable rivers, it has been beld that they may extend to the point of navigability. The owner has not an unlimited property in them. If the wharf be not reserved for his actual use, or of someone acquiring the right under him, it is open to the public, and any vessel may make fast to and use it. Neither can the owner charge an unreasonable price for wharfage. The question, therefore, in this case is whether a public wharf, i. e., a wharf thrown open to the public on navigable waters is real property within the rule above referred to; that is to say, whether wharfage is rent, and whether the relation of landlord and tenant must exist within the rule of the courts of common law and the decisions hereinafter referred to.
All of these things are elementary and have been enunciated by the highest authority. In the case of the Genesee Chief (12 Howard, 443), it was held that the English admiralty term of “high or low water mark” is merely descriptive, and appropriately so for that country, but that with us admiralty jurisdiction “ extends to all public navigable lakes and rivers.” In Dutton v. Strong (1 Black, 1), Mr. Justice Clifford applied that principle to wharves and substituted for low-water mark,“the point of navigability.” In the same case he also said that the owner of such a wharf “may be under obligation to concede to others the privilege of landing their goods or of mqoring their vessels there upon the payment of a reasonable compensation.” In Cannon v. New Orleans (20 Wall., 577), Mr. Justice Miller said:
“It is a doctrine too well settled, and a practice too common and too essential to the interest of commerce and navigation to admit of a doubt, that for the use of such structures, erected by individual enterprise, and recognized everywhere as private property, a reasonable compensation can be exacted. It may be safely admitted, also, that it is within the power of the State to regulate this compensation.”
In JSx parte Easton (95 U. S. B., 68), Mr. Justice Clifford said:
“ Where a price is agreed upon for the use of the wharf, the contract furnishes the measure of compensation, and when the wharf is used without any such agreement the contract is implied, and the proprietor is entitled to recover what is just and reasonablefor the use of his property and the benefit conferred.”
In Paelcet Company v. Keolcuh (ib., 80) Mr. Justice Strong-quoted the language of Mr. Justice Miller, before cited in Gan-non v. New Orleans, and the Supreme Court regarded it as *232 unquestionably established doctrine. In Paelcet v. St. Louis (100 U. S. R., 423) the Supreme Court again recognized the right of an owner of a wharf to collect reasonable compensation, though the defendant had from the first controverted his right.
It should be noted here that the defendants did not enter upon the property as the lessees of the State of New York, but under a naked license from the canal superintendent. A license is an authority to do a particular act or series of acts upon the land of another without acquiring an estate therein. When executed it will prevent the owner of the land from maintaining an action for the acts done under it; it is revocable at pleasure and will not be a defense for an act done after revocation. Nevertheless the fact remains that the defendants did not enter under the claimant or seek to acquire a right or estate under her, and that they have consistently disavowed any contractual relation with her.
When the Government goes into the commercial market it is bound by the lex mercatoria. (United States v. Panic of Metropolis, 15 Peters, 377.) And when it goes into the realty market to acquire property by lease, with no statutory restriction upon its agents, it is bound by the local law of landlord and tenant. (Bostioiclc v. The United States, 94 TJ. S. R., 53.) When the Government seeks to acquire property by the exercise of its right of eminent domain, the law of the United States regulates the proceeding; but when it goes into State territory to acquire an estate or right in or to real property by purchase, the law of the State controls and regulates the rights and liabilities of the contracting parties, which in this case is necessarily the law of the State of New York.
The law which would be applied to this case, if it were in the courts of New York, has been declared with remarkable distinctness in the case of Clifford v. O’Neill (12 App. Div. R., 17). That suit and the present one are to all intents and purposes identical. In like manner the defendant there entered upon a part of this property, an adjacent wharf, and used and occupied under a similar license issued by the same State superintendent; in like manner he denied all privity with the claimant; in like manner, when the suit was brought, he set up the license under which he entered. Moreover, the owner was the same in both cases, the property the same, the defense *233 tbe same. The two suits are absolutely identical, except that in one case the defendant was an individual citizen and in the other the Government of the United States.
The Supreme Court of the State of New York held in this case of Clifford v. O’Neill, an action like this, ex contractu, for use and occupation, that the plaintiff should recover; that the license of the canal superintendent was a nullity; that whoever uses’an unoccupied wharf on navigable waters is liable, in such an action, to the owner for a reasonable compensation for the user; and that it was no defense to set up that defendant had entered and occupied under a license from one who was not the owner.
The law of New York in regard to both realty and wharves, so far as it effects this case, does not differ from the general principles which have been declared by the Supreme Court. In Oollyer v. Oollyer (113 N. Y. B., 442) the Court of Appeals held, as it had repeatedly held before, that before a recovery can be had in an action for use and occupation, it must appear that the conventional relation of landlord and tenant existed between the parties, and that such an agreement can not be implied where the circumstances attending the use and occupation show clearly that there was no expectation of rent by either party.
Here it should be noted parenthetically that Mr; Justice Strong says, in Carpenter v. The United States (17 Wall. B., 489), that “ this is not strictly accurate, if it be meant that a demise must be in fact proved;” that “ when the defendant has entered and occupied by permission of the plaintiff, without any express contract, the law implies a promise on his part to make compensation or to pay a reasonable rent for his occupation; ” that “in such a case, the consent of the owner to the defendant’s entry, followed by such entry, and by subsequent occupation, maybe considered equivalent to a demise;” that this “is consistent with an unexplained entry by the owner’s consent, and because it is a reasonable presumption that occupation thus taken was intended to be paid for.”
In this statement of the law it would seem that when the Government enters upon private property as such it does so with the intent under its Constitutional obligation of paying for its use and occupation; and, conversely, when the owner assents to the occupancy by not bringing ejectment against the *234 officer, that be acquiesces with the expectation of receiving a reasonable rent. In neither of the cases which have been before the Supreme Court (Langford v. United States, 101 U. S. R., 341; Sill v. United States, 149 id., 593) did the Government enter upon the property as private property; that is, in neither of them was it admitted that the Constitutional obligation to pay for the user existed, and in neither of them did it assume to enter under any other title than its own. In Jackson's Case (26 C. Cls. R., 74) this distinctive fact was not considered.
But be this as it may, the difference, if any, between the rule as stated by the New York Court of Appeals and as modified by the Supreme Court is simply one of stringency. The New York case shows beyond question that in that State the action for use and occupation must be founded upon contract; that before the contract can be implied circumstances must be shown which were consistent only with an intent to contract, and that the “conventional relation of landlord and tenent must exist.”
So, too, with regard to the local law regulating property in wharves and the right of the public to use and the right of the owner to recover for the use, the decisions of the State of New York are in harmony with those of the Supreme Court. In Walsh v. The New Torh Floating Dry Dock Company (77 N. Y. R., 448), the Court of Appeals stated the general principle that “the right to collect wharfage is a franchise,” and that “it is given as a compensation to persons who, under the authority of law, have constructed piers and wharves, and to remunerate them for the outlay made for the convenience and safety of vessels and the benefit conferred thereby upon commerce and navigation.”
In Ziegele v. The Richelieu and Ontario Navigation Company et al. (3 App. Div. R., 77) the court below had granted an injunction restraining the defendants absolutely from using a wharf, they asserting a right to use it under an agreement with one who, it appeared, was not the owner. The appellate division concurred with the lower court as to the invalidity of the defendants’ title and the propriety of their being restrained from using the wharf under that agreement, but reversed the decree upon the ground that the defendants, as a part of the public, might have the right to use the dock in controversy upon the payment of a reasonable compensation. “It does not *235 follow,” says tbe court, “that because an individual owns a wharf he also has a right to the exclusive enjoyment of it, for he may at the same time be obliged to allow others to use it upon the payment to him of a reasonable compensation as wharfage.”
In the case of Clifford v. O’Neill which, as before said, is absolutely identical with the case now before us, the Supreme Court of New York says of the present claimant and the present property and upon the present issues:
“The plaintiff, being rightfully in possession of the docks in question in virtue of an unrevoked license from the canal commissioners, was entitled to demand from a person using the same such rental value therefor as might be agreed upon, or as such use was reasonably worth, even though the party using them rested his right to do so upon some authority which the superintendent of public works had attempted to confer. The right to demand and receive wharfage does not necessarily rest upon the existence of the conventional relation of landlord and tenant.”
Manifestly where one man enters upon and uses and enjoys the property of another he does so lawfully or unlawfully, rightly or wrongly. Iu the former case he can not be subjected to an action ex delieto, and is liable only upon a contract express or implied; in the latter the owner cau not turn an intrusion which was inconsistent with an understanding that the parties contemplated that the one was to pay and the other was to receive rent into a case of implied contract, but must sue in trespass or ejectment [Carpenter v. The United States, 17 Wall. B., 489), except, indeed, in a case of tenancy at sufferance, where the landlord, unlike the tenant, has an election to say whether the latter shall be treated as a tenant or as a trespasser (Conway v. Starlcweather, 1 Denio, 113; Schuyler v. Smith, 51 N. Y., 309). For every right there is a remedy; and with regard to realty occupied by the United States the remedy is in the one case by action in this court against the Government, and in the other by ejectment against the officer (United States v. Lee, 100 U. S. B., 196).
But courts of admiralty when dealing with wharf property never adopted these refinements of the common law, and from the nature of the thing they could not. A possessory action would not lie against one who had a right to possession, nor an action for damages against one ivhose entry had been law *236 ful. Accordingly the law declared to be applicable to wharf property was that when a person elected to enter upon the wharf of another he must do so either under an express agreement or under an implied contract to pay to the true owner, on his right of property being established, the wharfage prescribed by law, or a reasonable compensation for his use and occupancy; and to establish this contractual relation nothing was necessary but proof of use and occupancy; and (as in these New York cases) the person who used an unoccupied wharf could not avoid the contractual relation, which the law made for him, by setting up that he entered under another title than that of the true owner; and, consequently (as again in these New York cases), the title of the plaintiff in a suit for such use and occupation could be put in issue and determined without circuity of action. In a word, the person who entered under another title than that of the plaintiff must maintain the title under which he entered.
For different kinds of property the law prescribes different rules and remedies. If a man enter upon land amid circumstances which imply mutually a contractual relation the owner must sue for an implied rent. If a man enter upon property and destroy timber the owner must sue for damages. If he enter upon property and cut and carry away timber and saw it into boards and sell the boards the owner may sue for the money had and received. If he enter upon wharf property without the consent of the owner and uses it and continues to occupy it the owner has no remedy save an action for use and occupation; and because he has no other remedy the occupant can defeat that in but one way, and that is by defeating the plaintiff’s title or establishing a superior one.
If the present case can not be maintained, a citizen of New York whose property was taken and held by the Government for a great number of years without compensation will be left, in contemplation of law, without remedy. For she could not have maintained ejectment against the officer in possession, who could have come into court and pleaded that his entry was lawful; that his occupation was lawful; that he had entered, as he had a right to do, upon an unoccupied, unused wharf, built for public use upon a navigable waterway, and that he was using the wharf for lawful purposes.
Upon that pleading the courts of New York would hold that *237 the action against the officer could not be maintained, and that tbe owner should have brought suit for use and occupation and the reasonable val ue thereof. For the courts of a State to hold that a citizen has no remedy against the officer in possession, and for the courts of the United States to hold that she has no remedy against the Government, when both courts acknowledge and administer the same general principles of law, would be a reproach to the administration of justice.