## PACKET COMPANY *v.* KEOKUK.

1. A municipal corporation having, by its charter, an exclusive right to make wharves on the banks of a navigable river upon which it is situated, collect wharfage, and regulate wharfage rates, can, consistently with the Constitution of the United States, charge and collect from the owner of enrolled and licensed steamboats, which moor and land at a wharf constructed by it, wharfage proportioned to their tonnage.

2. Statutes which are constitutional in part only will be upheld and enforced so far as they are not in conflict with the Constitution, provided the allowed and the prohibited parts are severable.

ERROR to the Supreme Court of the State of Iowa.

The act of the legislature of Iowa creating the city of Keokuk a municipal corporation gave to the city council power to establish and regulate wharves, and to fix the rates of landing and wharfage of all boats, rafts, and water-craft moored at or landing at the wharves.  By virtue of this power, the city council, on the 26th of February, 1872, passed an ordinance, the first section of which ordained that all the ground then lying,

or which might thereafter be made, between Water Street, in the said city, and the middle channel of the Mississippi River, should be declared a wharf, and should be subject to be used, for such purposes, under such conditions as might be prescribed by ordinance. The second section declared that the whole of Water Street, as well as the land described in the foregoing section, should be open for the uses and purposes of a wharf, subject to the rules and regulations prescribed by ordinance for its government, and that all boats, rafts, and water-craft that are moored to or landed at any part of Water Street, and the persons owning, claiming, and having charge of the same, should be subject to the same rules, regulations, wharfage, and penalties as were provided by the ordinance in relation to boats, rafts, and other water-craft landing or mooring at the wharf, as defined by the third section. The third section ordained that any steamboat that should make fast to any part of said wharf or Water Street, or to any vessel or other thing at or upon said wharf or street, or should receive or discharge any passengers or freight thereon, or should use any part of said wharf or street for the purpose of discharging, receiving, or landing any freight or passenger, should be liable to a wharfage fee. This fee, the ordinance declared, should be one dollar, if the tonnage of the boat was less than fifty tons; one dollar and fifty cents, if the tonnage of the boat was less than one hundred tons and more than fifty; two dollars, if the tonnage was one hundred tons and less than two hundred; three dollars for boats of two hundred tons and less than three hundred; four dollars for boats of three hundred tons and less than four hundred; and five dollars for all boats of four hundred tons and upwards. The section also ordained that each boat that should remain at the wharf or street over two and less than five days should pay a wharfage fee of one dollar and fifty cents for each day after the first two days, and one dollar per day for every day over five days it might remain at the wharf or street. The fourth section of the ordinance applied the provision of the third section to barges, canal-boats, or keel-boats used in the carrying trade, landing at the wharf, whether in tow or otherwise. This ordinance the plaintiffs in error claim to be in conflict with the Constitution. They are the owners of several steam-

boats which have landed at the wharves of the city from time to time, and occupied them for the purpose of receiving and discharging freight and passengers. Wharfage dues were regularly demanded, but refused. Their boats were engaged in navigating the Mississippi River between St. Louis, Mo., and St. Paul, Minn., and they landed at Keokuk, one of their regular ports. While so employed, they were duly licensed and enrolled for the coasting trade, under the acts of Congress for the regulation of commerce.

These are all the material facts of the case, except that the landing of the boats was at an improved wharf which the city had built within its limits, extending about one thousand feet along the line of the river; a wharf which the city had paved, and in building, extending, and repairing of which it had expended a large sum of money. The money had been borrowed; and, to pay the interest of the debt, it became necessary to charge and collect reasonable wharfage. That the rates charged, if any charge is lawful, were reasonable, is not denied. They were no more than sufficient to meet the interest of the debt incurred for building and improving the wharf.

Suit having been brought to recover the wharfage prescribed by the ordinance, and a judgment for the amount having been recovered and affirmed by the Supreme Court of the State, the plaintiffs in error have brought the case here, and they now contend that the ordinance is invalid for several reasons. Of these, the principal alleged are, that it imposes a duty of tonnage, and that it is a regulation of commerce such as Congress only is authorized to make.

*Mr. Robert H. Gilmore* and *Mr. James H. Anderson* for the plaintiff in error.

1. The ordinance of the city of Keokuk imposes a wharfage tax measured by the carrying capacity of the vessel, and lays a duty of tonnage.

2. A tax on the vehicle of commerce is as much a duty as if it were levied on articles exported from the State.

3. The ordinance is therefore a regulation of commerce.

4. So far as it seeks to levy a tax upon citizens of another State who are engaged in the navigation of the Mississippi, a free public highway, it is contrary to the ordinance of 1787,

and the act of Congress admitting the State of Iowa into the Union.

5. It is also contrary to the act of Congress whereby vessels enrolled and licensed for the coasting trade are exempted from any toll or tax for the privilege of entering or stopping in a port of the United States.

These propositions are sustained by the following authorities: Constitution of the United States, art. 1, sects. 8–10; Ordinance of 1787, art. 4, last clause; 5 Stat. 10; id. 742; Rev. Stat., sects. 4311, 4320 ; Story on the Constitution, sects. 1016, 1018; *Gibbons* v. *Ogden,* 9 Wheat. 1; *Brown* v. *Maryland,* 12 id. 419; *Smith* v. *Turner,* 7 How. 283 ; *Sinnot et al.* v. *Davenport et al.,* 22 id. 227 ; *Almy* v. *State of California,* 24 id. 169; *Steamship Company* v. *Port Wardens,* 6 Wall. 31; *State Tonnage Tax Cases,* 12 id. 204; *Peete* v. *Morgan,* 19 id. 581; *Cannon* v. *New Orleans,* 20 id. 577; *Hackley* v. *Geraghty,* 34 N. J. L. 332; *People* v. *Raymond,* 34 Cal. 492; *People* v. *Moring,* 47 Barb. (N. Y.) 642; *Alexander* v. *Railroad Company,* 3 Strobh. (S. C.) 594; *Sheffield* v. *Parsons,* 3 Stew. & P. (Ala.) 302; *Lott* v. *Morgan,* 41 Ala. 250; *North-western Union Packet Co.* v. *St. Paul,* 3 Dill. 454; *Inman Steamship Co.* v. *Tinker,* 94 U. S. 238.

*Mr. John H. Craig* for the defendant in error.

The ordinance of the city of Keokuk does not lay a duty of tonnage, or an impost or duty on imports or exports, nor does it regulate commerce or navigation. This is merely a case of wharfage. Decided cases affirm the following propositions: —

1. Wharves erected by individual enterprise are private property.

2. For their use a reasonable compensation can be exacted.

3. The State has the power to regulate this compensation, and may delegate it to the local municipal authorities; and, when the power has been delegated to a city owning wharves to assist vessels landing within its limits, it can rightfully exact this compensation. *Barney* v. *Keokuk,* 94 U. S. 324; *Dutton* v. *Strong,* 1 Black, 1; *Railroad Company* v. *Schurmeir,* 7 Wall. 272; *Yates* v. *Milwaukee,* 10 id. 497; *The Wharf Case,* 3 Bland (Md.), 361; *Ward* v. *Thompson,* 6 Gill & J. (Md.) 349; *City of Pittsburgh* v. *Grier,* 22 Penn. St. 54; *Bucker* v. *Brown,*

21 Wend. (N. Y.) 710; *Wiswall* v. *Hall*, 3 Paige (N. Y.), Ch. 313; *Schwartz* v. *Flatboats*, 14 La. Ann. 243; *Geiger* v. *Felor*, 8 Fla. 325; *Murphy* v. *Montgomery*, 11 Ala. 586; *Sacramento* v. *Confidence*, 4 Cal. 45; *People* v. *Broadway Wharf Co.*, 31 id. 34; *Haight* v. *City of Keokuk*, 4 Iowa, 199; *Grant* v. *City of Davenport*, 18 id. 181; *County of St. Clair* v. *Lovingston*, 23 Wall. 46; *Ingraham, Kennedy, & Day* v. *Chicago, D. & M. Railroad Co.*, 34 Iowa, 249; *Atlee* v. *The Packet Company*, 21 Wall. 290.

Admitting that parts of the ordinance under consideration may be in conflict with the Constitution and laws of the United States, it does not follow that its unobjectionable provisions, when capable of being separately enforced, will be set aside, and its legitimate purposes defeated.

MR. JUSTICE STRONG delivered the opinion of the court.

The principal question presented by the record of this case is, whether a municipal corporation of a State, having by the law of its organization an exclusive right to make wharves, collect wharfage, and regulate wharfage rates, can, consistently with the Constitution of the United States, charge and collect wharfage proportioned to the tonnage of the vessels from the owners of enrolled and licensed steamboats mooring and landing at the wharves constructed on the banks of a navigable river.

The city of Keokuk is such a corporation, existing by virtue of a special charter granted by the legislature of Iowa. To determine whether the charge prescribed by the ordinance in question is a duty of tonnage, within the meaning of the Constitution, it is necessary to observe carefully its object and essence. If the charge is clearly a duty, a tax, or burden, which in its essence is a contribution claimed for the privilege of entering the port of Keokuk, or remaining in it, or departing from it, imposed, as it is, by authority of the State, and measured by the capacity of the vessel, it is doubtless embraced by the constitutional prohibition of such a duty. But a charge for services rendered or for conveniences provided is in no sense a tax or a duty. It is not a hindrance or impediment to free navigation. The prohibition to the State against the imposi-

tion of a duty of tonnage was designed to guard against local hindrances' to trade and carriage by vessels, not to relieve them from liability to claims for assistance rendered and facilities furnished for trade and commerce. It is a tax or a duty that is prohibited: something imposed by virtue of sovereignty, not claimed in right of proprietorship. Wharfage is of the latter character. Providing a wharf to which vessels may make fast, or at which they may conveniently load or unload, is rendering them a service. The character of the service is the same whether the wharf is built and offered for use by a State, a municipal corporation, or a private individual; and, when compensation is demanded for the use of the wharf, the demand is an assertion, not of sovereignty, but of a right of property. A passing vessel may use the wharf or not, at its election, and thus may incur liability for wharfage or not, at the choice of the master or owner. No one would claim that a demand of compensation for the use of a dry-dock for repairing a vessel, or a demand for towage in a harbor, would be a demand of a tonnage tax, no matter whether the dock was the property of a private individual or of a State, and no matter whether proportioned or not to the size or tonnage of the vessel. There is no essential difference between such a demand and one for the use of a wharf. It has always been held that wharfage dues may be exacted; and it is believed that they have been collected in ports where the wharves have belonged to the State or a municipal corporation ever since the adoption of the Constitution. In *Cannon* v. *New Orleans*, 20 Wall. 577, this court, while holding an ordinance void that fixed dues upon steamboats which should moor or land in any part of the port of New Orleans, measured by the number of tons of the boats, because substantially a tax for the privilege of stopping in the port, and, therefore, a duty or tonnage, carefully guarded the right to exact wharfage. The language of the court was: " In saying this (namely, denying the validity of the ordinance then before it), we do not understand that this principle interposes any hindrance to the recovery from any vessel landing at a wharf or pier owned by an individual, or by a municipal or other corporation, a just compensation for the use of such property. It is a doctrine too well settled, and a practice too

common and too essential to the interests of commerce and navigation, to admit of a doubt, that for the use of such structures, erected by individual enterprise and recognized everywhere as private property, a reasonable compensation can be exacted. And it may be safely admitted, also, that it is within the power of the State to regulate this compensation, so as to prevent extortion, a power which is often very properly delegated to the local municipal authority. Nor do we see any reason why, when a city or other municipality is the owner of such structures, built by its own money, to assist vessels landing within its limits in the pursuit of their business, the city should not be allowed to exact and receive this reasonable compensation, as well as individuals."

No doubt, neither a State nor a municipal corporation can be permitted to impose a tax upon tonnage under cover of laws or ordinances ostensibly passed to collect wharfage. This has sometimes been attempted, but the ordinances will always be carefully scrutinized. In *Cannon* v. *New Orleans*, the ordinance was held invalid, not because the charge was for wharfage, nor even because it was proportioned to the tonnage of the vessels, but because the charge was not for wharfage or any service rendered. It was for stopping in the harbor, though no wharf was used. Such, also, was *North-western Packet Co.* v. *St. Paul*, 3 Dill. 454. So, in *Steamship Company* v. *Port Wardens*, 6 Wall. 31, the statute held void imposed a tax upon every ship entering the port. This was held to be alike a regulation of commerce and a duty of tonnage. It was a sovereign exaction, not a charge for compensation. Of the same character was the tax held prohibited in *Peete* v. *Morgan*, 19 id. 581.

It is insisted, however, on behalf of the plaintiffs in error, that the charge prescribed by the ordinance must be considered as an imposition of a duty of tonnage, because it is regulated by and proportioned to the number of tons of the vessels using the wharf; and the argument is attempted to be supported by the ruling of this court in *State Tonnage Tax Cases*, 12 Wall. 204. But this is a misconception of those cases. The statute of Alabama declared invalid was not a provision to secure or regulate compensation for wharfage, or for any services rendered

to the vessels taxed. It imposed a tax "upon all steamboats, vessels, and other water-crafts plying in the navigable waters of the State," to be levied "at the rate of one dollar per ton of the registered tonnage thereof." It did not tax the boats as property in proportion to their value, but according to their capacity, or, as was said, "solely and exclusively on the basis of their cubical contents, as ascertained by the rules of admeasurement and computation prescribed by Congress." It was the nature of the tax or duty, coupled with the mode of assessing it, which made the law a violation of the Constitution. As stated, the vessels taxed were such as were plying in the navigable waters of the State. If not plying in those waters, they were not taxed. The tax was, therefore, an impediment to navigation in those waters, which led the court to say that it was as instruments of commerce and not as property the vessels were required to contribute to the revenues of the State. The fact that the tax was proportioned to the tonnage of the vessels taxed was relied upon only as supporting the conclusion that they were not taxed as property, but as instruments of commerce; and the court, in view of all these considerations, remarked, "Beyond all question, the act is an act to raise revenue without any corresponding or equivalent benefit or advantage to the vessels taxed or to the ship-owners, and consequently it is not to be upheld by virtue of the rules applied in the construction of laws regulating pilot dues and port charges." Nothing in these cases justifies the assertion that either wharfage or port charges are duties of tonnage, merely because they are proportioned to the actual tonnage or cubical capacity of vessels. It would be a strange misconception of the purpose of the framers of the Constitution were its provisions thus understood. What was intended by the provisions of the second clause of the tenth section of the first article was to protect the freedom of commerce, and nothing more. The prohibition of a duty of tonnage should, therefore, be construed so as to carry out that intent. A mere adherence to the letter, without reference to the spirit and purpose, may in this case mislead, as it has misled in other cases. It cannot be thought the framers of the Constitution, when they drafted the prohibition, had in mind charges for services rendered or for conveniences furnished to

vessels in port, which are facilities to commerce rather than hindrances to its freedom; and, if such charges were not in mind, the mode of ascertaining their reasonable amount could not have been. In *Cooley* v. *The Board of Port Wardens*, 12 How. 299, this court recognized a clear distinction between wharfage and duties on imports or exports, or duties on tonnage. Referring to the second paragraph of sect. 10, art. 1, of the Constitution, Curtis, J., speaking for the court, said: " This provision of the Constitution was intended to operate upon subjects actually existing and well understood when the Constitution was formed. Imposts, and duties on imports, exports, and tonnage, were then known to the commerce of the civilized world to be as distinct from fees and charges for pilotage, and from the penalties by which commercial States enforced their laws, as they were from charges for wharfage or towage, or any other local port charges for services rendered to vessels or cargoes, and to declare that such pilot fees or penalties are embraced within the words imposts, or duties on imports, exports, or tonnage, would be to confound things essentially different, and which must have been known to be actually different by those who used this language. . . . It is the thing and not the name that is to be considered."

For these reasons, we hold that the ordinance cannot be considered as imposing a duty of tonnage, and what we have said is sufficient to show that most of the other objections of the plaintiffs in error to its validity have no substantial foundation. It is in no sense a regulation of commerce between the States, nor does it impose duties upon vessels bound to or from one State to another, nor compel entry or clearance in the port of Keokuk; nor is it contrary to the compact contained in the ordinance of 1787, since it levies no tax for the navigation of the river; nor is it in conflict with the act of Congress respecting the enrolment and license of vessels for the coasting trade. All these objections rest on the mistaken assumption that port charges, and especially wharfage, are taxes, duties, and restraints of commerce.

In nothing that we have said do we mean to be understood as affirming that a city can, by ordinance or otherwise, charge or collect wharfage for merely entering its port, or stopping

therein, or for the use of that which is not a wharf, but merely the natural and unimproved shore of a navigable river. Such a question does not arise in this case. The record shows that the wharfage charged to these plaintiffs in error was for the use of a wharf, built, paved, and improved by the city at large expense. So far as the ordinance imposes and regulates such a charge, it is not obnoxious to the accusation that it is in conflict with the Constitution. A different question would be presented had the steamboats landed at the bank of the river where no wharf had been constructed or improvement made to afford facilities for receiving or discharging cargoes. We adhere to all that was decided in *Cannon* v. *New Orleans.* In that case, the city ordinance imposed what were called " levee dues " on all steamboats that should moor or land in any part of the harbor of New Orleans. It was subsequently amended by the substitution of the words " levee and wharfage dues " for " levee dues;" but, even as amended, it did not profess to demand wharfage. The plaintiff filed a petition for an injunction against the collection of the dues prescribed by it, and for the recovery of those he had been compelled to pay. It did not appear that he had ever made use of any wharf or improved levee; and what we decided was, that the city could not impose a charge for merely stopping in the harbor. The case in hand is different. The ordinance of Keokuk has imposed no charge upon these plaintiffs which it was beyond the power of the city to impose. To the extent to which they are affected by it there is no valid objection to it. Statutes that are constitutional in part only, will be upheld so far as they are not in conflict with the Constitution, provided the allowed and prohibited parts are severable. We think a severance is possible in this case. It may be conceded the ordinance is too broad, and that some of its provisions are unwarranted. When those provisions are attempted to be enforced, a different question may be presented.

*Judgment affirmed*