# CITY OF ST. LOUIS, Appellant, v. CONSOLIDATED COAL COMPANY.

## Division One, November 12, 1900.

**License on Boats: TOWING IN RIVER: WHARFAGE CHARGES: INVALID ORDINANCE.** A city ordinance that exacts a license from the owner of a boat (licensed under the laws of Congress for the coasting trade and engaged under that authority in transporting freight upon the Mississippi river from Illinois to Missouri), for the privilege "of towing boats, or other water craft into or out of the harbor or from one place to another within said harbor," is in violation of the rights of the owner, as a navigator in the coasting trade, under the Federal Constitution, which ordains that Congress shall have power to regulate commerce among the several States, and is invalid. Such ordinance does not exact the license fee on the ground of compensation for the use of the city wharf, and can not be construed to simply demand the payment of such wharfage charges, although it contains a qualified provision that the amount paid for the license "shall be in lieu of all wharfage during the time said license remains in force," said provision simply meaning that the city will not exact wharfage from the owner of a vessel who has paid the license for the privilege of navigating that part of the river embraced within the city harbor.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*B. Schnurmacher* and *Charles Claflin Allen* for appellant.

(1) A municipal corporation authorized by the State to construct wharves and to improve its harbor may impose wharfage or port charges upon vessels and water craft for the use of such improved wharf or harbor. Keokuk Northern

Line Packet Co. v. Keokuk, 95 U. S. 80; Northwestern Union Packet Co. v. St. Louis, 100 U. S. 423; Wiggins Ferry Co. v. East St. Louis, 107 U. S. 365.   (2) The exaction of reasonable charges as compensation for the use of artificial facilities for the improvement of navigation is not an impost upon such navigation nor an interference with its freedom. Nor is it an objection that such charges are based or calculated upon the tonnage of vessels instead of by some other method. Luse v. Glover, 119 U. S. 543.   (3) Vehicles engaged in interstate commerce are subject to taxation by the States or by municipal corporations authorized by them.   Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18; Union Refrigerator Transit Co. v. Lynch, U. S. Sup. Ct., decided April 9, 1900 (not yet officially reported).  (4) The ordinance under consideration is constitutional and valid.   St. Louis v. Consolidated Coal Co., 113 Mo. 83; Wiggins Ferry Co. v. East St. Louis, 107 U. S. 365.

*Charles W. Thomas* for respondent.

When the city of Chicago, at its own expense, dredged and improved the Chicago river which was wholly within its limits, and adopted an ordinance by which license fees were exacted from owners of tugs plying therein and licensed under Title L of the Revised Statutes of the United States, it was held that the ordinance was void as an unwarrantable interference with commerce between the States.   Harman v. Chicago, 147 U. S. 396.   There is no distinction between this case and the case at bar, and that decision remains in full force.

VALLIANT, J.—This is a suit to recover the license charges for two steam tugs and a transfer barge operated by defendant in the harbor of St. Louis, which charges were established by an ordinance of the city which provides as

follows: "It shall not be lawful for any job tow boat to engage or continue in the business of towing boats or other water craft into the harbor of this city, or from one place to another within said harbor, nor shall it be lawful for any boat or barge to engage or continue in the business of trans-porting railroad cars within the harbor of this city, without a license for such purpose from said city continuing in force." The ordinance then goes on to prescribe the amount of the license fee, grading it according to tonnage or capacity of the vessel, directing how it is to be collected, etc., and continues: "A reduction of forty per cent from the rates of license established by this section, shall be allowed to vessels owned by residents of St. Louis and returned and assessed for taxation within said city during the year commencing on the first day of June immediately preceding the day on which the license takes effect. The license required by this section shall not issue for a shorter period of time than one month and the amount paid for the same shall be in lieu of all wharfage during the time that said license remains in force; *provided* said boat or barge does not engage in any other than towing and transfer business." A further provision of the same section made the running of a tug or barge without the required license a misdemeanor punishable by fine. The petition alleges that the defendant, an Illinois corporation, is indebted to the plaintiff city "in the sum of thirty dollars, being the license charge imposed by said section 232 on the steam tug Gartside, owned by said defendant, and employed by it in towing boats into and out of the harbor of St. Louis and from one place to another in said harbor for the period of three months from," etc. And in like terms it alleges that defendant is indebted to plaintiff in the sum of $50 as license charge for the tug Alice Parker and $120 for the barge Louisa, aggregating $200 for the three vessels, for which judgment is prayed.

This is the second appeal in this case.   When it was here on the former appeal the only question that was raised by the defendant's answer was whether or not defendant was entitled to the forty per cent reduction which the ordinance conceded to vessels owned by residents of St. Louis and returned by them for taxation in the city.   Defendant tendered with its answer then, sixty per cent of the amount sued for. This court decided then that the defendant was entitled to the reduction and reversed the judgment of the circuit court which was contrary to that view and remanded the cause for a new trial.   [City of St. Louis v. Consolidated Coal Co., 113 Mo. 83.]   In the opinion delivered at that time we said that the ordinance was not in conflict with any provision of the Constitution of this State or that of the United States. But what was then said was in response to the issues then made by the pleadings.   The only suggestion then made by defendant as to the constitutionality of the ordinance was that, if it was to be construed as discriminating against the defendant because it was not a resident of St. Louis, the ordinance was invalid.   That decision was rendered December 19, 1892.   Very shortly after the rendition of that decision, to-wit, January 23, 1893, the Supreme Court of the United States in Harman v. Chicago, 147 U. S. 396, decided that a similar ordinance of the city of Chicago was, on another point presently to be noted, in conflict with the Constitution and laws of the United States.   In the light of that decision the defendant amended its answer by adding that its tugs and barge were at the time referred to in the petition duly enrolled and licensed in the district for the coasting trade under the provisions of Title L of the Revised Statutes of the United States and were, under that authority, engaged in transporting freight upon the Mississippi river from the State of Illinois to the State of Missouri.

Upon the pleadings so amended the cause came on for

trial again in the circuit court and was submitted for judgment upon an agreed statement of facts in which, *inter alia,* it was admitted that the vessels were enrolled for the coasting trade under United States authority as pleaded, and that in pursuance of that license they were "engaged in transporting freight along and upon the Mississippi river and from the State of Illinois to the State of Missouri, and that said tugs and barge were engaged in carrying principally coal and incidentally freight from the State of Illinois into the harbor of the city of St. Louis, and unloading the same into vessels that were moored at and tied to the improved wharf of the city of St. Louis."

There were other paragraphs in the agreed statement designed to affect the amount the plaintiffs would be entitled to recover if the ordinance should be held to be not wholly invalid, and there were instructions asked by the plaintiff on the theory that the ordinance was valid, but as the plaintiff's whole case rests on the ordinance and as we are satisfied that that is entirely invalid under the Constitution and laws of the United States, there is no necessity for setting out those other facts or the instructions asked predicated upon them. The trial court gave an instruction to the effect that "the license fees exacted by the ordinance were an interference with and obstruction upon commerce between the States, over which Congress has exclusive control, and that the plaintiff can not recover." Judgment was accordingly rendered for defendant, and plaintiff appeals.

The contention on behalf of the city now is that the license fee required by the ordinance is a charge for the use of the city's wharf and not a license tax for the privilege of navigating so much of the Mississippi river as is embraced within the city harbor. If that is a correct conclusion as to the fact, then the conclusion drawn by the learned city counselor as to the law of the case is correct.

The Supreme Court of the United States has in several cases decided that a wharfage charge might lawfully be demanded of vessels licensed by the United States as the vessels in this case were. In Packet Co. v. Keokuk, 95 U. S. 80, the court said:. "If the charge is clearly a duty, a tax, or burden, which in its essence is a contribution claimed for the privilege of entering the port of Keokuk, or remaining in it, or departing from it, imposed, as it is, by authority of the State, and measured by the capacity of the vessel, it is doubtless embraced by the constitutional prohibition of such a duty. But a charge for services rendered or for conveniences provided is in no sense a tax or duty. It is not a hindrance or impediment to free navigation. The prohibition to the State against the imposition of a duty of tonnage was designed to guard against local hindrances to trade and carriage by vessels, not to relieve them from liability to claims for assistance rendered and facilities furnished for trade and commerce. It is a tax or a duty that is prohibited; something imposed by virtue of sovereignty, not claimed in right of proprietorship. Wharfage is of the latter character." And further in the same opinion it is said: "No doubt, neither a State nor a municipal corporation can be permitted to impose a tax upon tonnage under cover of laws or ordinances ostensibly passed to collect wharfage. This has sometimes been attempted, but the ordinances will always be carefully scrutinized." In that connection the court referred to Cannon v. New Orleans, 20 Wall. 577, in which it was held that a city ordinance was invalid which prescribed a rate per ton and duration of moorage "for the levee and wharfage dues on all steamboats which should land or moor in any part of the port of New Orleans." Construing that ordinance, the court said: "We are of the opinion that upon the face of the ordinance itself as applied to the recognized condition of the river and its banks within the city, the

dues here claimed can not be supported as a compensation for the use of the city's wharves, but that it is attached upon every vessel which stops, either by landing or mooring, in the waters of the Mississippi river within the city of New Orleans, for the privilege of so landing or mooring."

In Packet Co. v. St. Louis, 100 U. S. 423, an ordinance which imposed a wharfage fee regulated by the tonnage of the vessel on every boat landing at the wharf in the city was held valid.

In Vicksburg v. Tobin, Id., 430, the doctrine of the cases above mentioned was reiterated and the further point adjudged that the wharfage fee was valid though imposed on a boat that did not land immediately against the wharf, but against a wharf boat which was against the wharf, the court holding that to use the wharf boat under those conditions was to use the wharf.

In Transportation Co. v. Parkersburg, 107 U. S. 691, an ordinance of the city which imposed a charge on boats using its wharf was held to be valid, and that the fact that the charge was graduated by the tonnage of the vessel was immaterial. The court distinguishes in that case a duty on tonnage, as referred to in the Federal Constitution, and a charge for wharfage. "The one is imposed by the government, the other by the owner of the wharf or landing. The one is a commercial regulation, dictated by the general policy of the country upon considerations having reference to its commerce or revenue; the other is a rent charged by the owner of the property for its temporary use."

In Huse, v. Glover, 119 U. S. 543, the court sustained the validity of a statute of Illinois under which toll was charged for boats passing through locks and canals constructed in the Illinois river. It was there said of the Federal law in question: "It did not contemplate that such navigation might not be improved by artificial means, by the

removal of obstructions, or by the making of dams for deepening the waters, or by turning into the rivers waters from other streams to increase their depth. For outlays caused by such works the State may exact reasonable tolls. They are like charges for the use of wharves and docks constructed to facilitate the landing of persons and freight, and the taking them on board, or for the repair of vessels."

Other decisions from the same high source cited by the learned city counselor fully sustain his contention that the city may lawfully impose a reasonable charge on boats landing at its wharf or landing against a boat that is moored at the wharf, but the cases above quoted from are sufficient to show the condition of the law on that point. All of those cases are referred to and approved in Harman v. Chicago, *supra.* but the court distinguishes them from that case and they are to be distinguished from this. The Chicago ordinance which passed under judgment in that case was: "Sec. 1. No person or persons shall keep, use or let for hire any tug or steam barge or tow boat, for towing vessels or craft in the Chicago river, its branches or slips connected therewith, without first obtaining a license therefor in the manner and way hereinafter mentioned." Then followed other sections indicating the amount of the license fee, the manner of its issuance, etc., and denouncing a penalty of a fine against any one violating the ordinance.

Now let us lay the St. Louis ordinance by the side of the Chicago enactment, and see how they differ, if at all, in legal effect: "Sec. 232. It shall not be lawful for any job tow boat to engage or continue in the business of towing boats or other water craft into or out of the harbor of this city, or from one place to another within said harbor, nor shall it be lawful for any boat or barge to engage or continue in the business of transporting railroad cars withing the harbor of this city without a license for such purpose, from said

city continuing in force," followed by detail as to amount and mode of issuance of license and penalties for its violation.

Of the Chicago ordinance the court in that case said: "In the present case a neglect or refusal of the owner of the tugs to pay the license required by the ordinance subjects him to the imposition of a fine. His only alternative is to pay the fine, or the use of his tugs in their regular business will be stopped. Of course, the ordinance, if constitutional and operative, has the effect to restrain the use of the vessels in the legitimate commerce for which they are expressly licensed by the United States. It would be a burden and restraint upon that commerce, which is authorized by the United States, and over which Congress has control. No State can interfere with it, or put obstructions upon it, without coming in conflict with the supreme authority of Congress. The requirement that every steam tug, barge or two-boat, towing vessels or craft for hire in the Chicago river or its branches shall have a license from the city of Chicago, is equivalent to declaring that such vessels shall not enjoy the privileges conferred by the United States, except upon the conditions imposed by the city. This ordinance is, therefore, plainly and palpably in conflict with the exclusive power of Congress to regulate commerce, interstate and foreign."

It was a part of the agreed statement of facts in that case that the Chicago river had been deepened and improved for navigation by the city at its expense and the contention was that the license fee was but a reasonable charge for that service. The court said: "The attempt is made to assimilate the present case to those cases (Huse v. Glover, and other cases) from the fact that it is conceded that the Chicago river is from time to time deepened for navigation purposes by dredging under the direction and at the expense of the city. The license fee provided for in the ordinance of the city is treated as in the nature of a toll or compensation for

the expense of deepening the river.   But the plain answer to this position is that the license fee is not exacted upon any such ground, nor is any suggestion made that any special benefit has arisen or can arise to the tugs in question by the alleged deepening of the river."

So in the case at bar, the ordinance of the city of St. Louis does not exact the license fee on the ground of compensation for the use of its wharf but it is for the privilege "of towing boats, or other water craft into or out of the harbor or from one place to another within said harbor."   It is true there is a qualified provision in the ordinance that the amount paid for the license "shall be in lieu of all wharfage during the time said license remains in force," but that clause only more clearly distinguishes the license fee from a wharfage toll, and it simply means that the city will not exact wharfage from the owner of a vessel who has paid the city license for the privilege of navigating that part of the river embraced within the city harbor.   But even that exemption does not apply to all vessels carrying the city license but only to those that do "not engage in any other than towing or transfer business."

The case is before us now upon totally different questions from those presented in the former appeal, and doubtless the decision in Harman v. Chicago, which, as we have seen, followed very shortly after our decision on the former appeal, suggested the changes.   The defendant, in the light of that decision, discovered that its rights, under the Federal Constitution, as a navigator in the coasting trade, were being violated, and the plaintiff, to avoid the force of that charge, was compelled to take the position that these license fees were in fact compensation for wharfage.   But that idea was not in this case from the beginning, and is not even now found in the plaintiff's petition; the statement in the petition is that the defendant is indebted to the plaintiff for a license fee

imposed on the tugs owned by defendant and "employed by it in towing boats into and out of the harbor of St. Louis and from one place to another within said harbor," and in that respect the petition closely follows the ordinance on which it is founded.

The Constitution of the United States ordains that "Congress shall have 'power . . . . . . . to regulate commerce with foreign nations and among the several States." [Art. 1, sec. 8.] And: "No State shall, without the consent of Congress lay any duty of tonnage." [Art. 1, sec. 10.] We are of the opinion that the ordinance of the city of St. Louis on which this suit is founded is in violation of those provisions of the Federal Constitution and therefore invalid.

This is the view taken by the learned trial judge, and the judgment of the circuit court is affirmed.

All concur, except *Marshall, J.,* not sitting, having been of counsel.