EDWARD SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 46874, 58941. Promulgated April 16, 1935.

*Harry N. Wyatt, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

OPINION.

McMAHON: These are proceedings, duly consolidated, for the redetermination of asserted deficiencies in income tax as follows:

| | | | |
|---|---|---|---|
| 1924 | $15,749.26 | 1927 | $9,442.49 |
| 1925 | 4,758.62 | 1928 | 15,258.11 |
| 1926 | 13,907.92 | 1929 | 2,678.51 |

The issue presented is that of the constitutionality of section 204 (a) (8) of the Revenue Acts of 1924 and 1926 and section 113 (a) (8) of the Revenue Act of 1928 in so far as they require, in determining gain or loss upon the sale of property acquired by a corporation in exchange for its own stock, the use of the cost of said property to transferor when such property was acquired by the corporation prior to the enactment of the 1924 Act.

The parties entered into and submitted in evidence a written stipulation of facts, which we adopt as our findings of fact by reference, setting forth here only those facts necessary to an understanding of the question presented.

The petitioner is a corporation, organized in 1923 under the laws of the State of Illinois. On December 26, 1923, E. N. D'Ancona, pursuant to due action of petitioner, assigned, transferred, and delivered to petitioner certain securities then owned by E. N. D'Ancona, and received in exchange therefor 9,972 fully paid and nonassessable shares of the 10,000 shares of the authorized capital stock of petitioner of the par value of $100 a share, or an aggregate of $997,200 par value of such stock. Immediately following such transfer the petitioner had 9,982 shares of its capital stock of 10,000 shares of the par value of $100 a share outstanding, which stock was owned by the following persons:

| | |
|---|---|
| E. N. D'Ancona | 9,980 shares |
| Alfred E. D'Ancona | 1 share |
| Maurice Marwick | 1 share |

The two shares owned by Alfred E. D'Ancona and Maurice Marwick were directors' qualifying shares.

Pursuant to resolutions duly adopted by the stockholders of petitioner at a special meeting held June 17, 1927, the authorized capital stock of petitioner was changed and decreased from $1,000,000, consisting of 10,000 shares of the par value of $100, to $500,000 consisting of 10,000 shares of the par value of $50, and the outstanding capital stock of petitioner was changed and decreased from $998,200, consisting of 9,982 shares of the par value of $100, to $499,100, consisting of 9,982 shares of the par value of $50 per share, and such change and decrease in the authorized capital stock of petitioner was effected by the surrender by the stockholders of petitioner of 9,982 shares of the par value of $100 then outstanding and the issuance to them, in lieu thereof, of 9,982 shares of the par value of $50 per share.

E. N. D'Ancona owned 9,980 shares of the capital stock of petitioner out of a total of 9,982 shares outstanding throughout the calendar years 1924 to 1929, inclusive, the years under consideration in the above entitled petitions.

During 1924 to 1929, inclusive, the petitioner sold securities as follows:

| Year of sale | Shares | Kind of stock | Issuing company | Cost or basis to E. N. D'Ancona | Fair market value 12-26-23 | Net proceeds of sale |
|---|---|---|---|---|---|---|
| 1924 | 3,700 | Class B | Yellow Cab Mfg. Co. | $67,800.00 | $362,600 | $195,506.46 |
| 1925 | 500 | Common | Balaban & Katz Corporation | 23,750.00 | 26,000 | 38,060.00 |
| 1926 | 1,700 | Class B | Yellow Cab Mfg. Co. | 24,921.74 | 166,000 | 49,961.85 |
| 1926 | 500 | Common | Balaban & Katz Corporation | 4,846.25 | 26,000 | 40,000.00 |
| 1926 | 1,000 | | Yellow Taxi Co. of New York | 27,000.00 | 40,000 | 14,699.59 |
| 1927 | 425 | Preferred | Yellow Cab Mfg. Co. | 6,230.50 | | 36,094.88 |
| 1927 | 273 | Common | Yellow Taxi Co. of New York | 4,898.99 | 32,760 | 4,231.50 |
| 1928 | 500 | Common | do | 8,971.71 | 60,000 | 9,917.50 |
| 1928 | 1,650 | | Chic. Yellow Cab Co. | 8,250.00 | 100,650 | 51,569.50 |
| 1929 | 350 | | do | 1,750.00 | 21,350 | 34,460.00 |
| | 150 | | Parmelee Co. | 6,500.00 | 11,250 | 14,887.50 |

All these securities were acquired by the petitioner on December 26, 1923, from E. N. D'Ancona, as heretofore set forth, with the following exceptions: (1) 425 shares of preferred stock of the Yellow Cab Manufacturing Co., which were received by the petitioner October 10, 1925, as a stock dividend on the 1,700 shares of class B stock of the same company acquired from E. N. D'Ancona, and (2) 1,000 shares of the capital stock of the Chicago Yellow Cab Co., which were received by the petitioner December 27, 1923, as a stock dividend on 1,000 shares of the same company acquired from E. N. D'Ancona. In computing the cost basis of such 1,700 shares and 1,000 shares, set forth in the above schedule, effect was given to the acquisition of these dividends, and a part of the original cost was allocated to the dividend shares.

The respondent determined that the petitioner realized as a taxable gain the difference between the cost of the securities involved to E. N. D'Ancona, the transferor thereof, and the price at which such securities were sold by the petitioner.

Upon the foregoing facts, the petitioner contends that section 204 (a) (8) of the Revenue Acts of 1924 and 1926 [1] and section 113 (a)

---

[1] SEC. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 \* \* \*, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

SEC. 203. (b) (4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons, this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

\* \* \* \* \* \* \*

(1) As used in this section the term "control" means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

(8) of the Revenue Act of 1928 [2] are unconstitutional and invalid in so far as they are retrospective in operation and purport to require, in the determination of gain or loss upon the sale of property acquired by a corporation in exchange for its own stock, the use of cost thereof to the transferor where such property was acquired prior to the enactment of the 1924 Act, or June 2, 1924.

The petitioner concedes that the constitutionality of the retroactive features of the above sections has been upheld in *Osburn California Corporation* v. *Welch*, 39 Fed. (2d) 41 (certiorari denied, 282 U. S. 860) ; *Newman Saunders & Co.* v. *United States*, 36 Fed. (2d) 1009 (certiorari denied, 281 U. S. 760) ; *Haas Building Co.*, 22 B. T. A. 528; *T. W. Phillips, Jr., Inc.*, 23 B. T. A. 1272 (affd., *Phillips, Jr., Inc.* v. *Commissioner*, 63 Fed. (2d) 101) ; and *Kay Finance Corporation*, 25 B. T. A. 913, cited upon oral argument by respondent, but contends that in none of the above cases was the precise argument here presented advanced or considered. Its position is that "where the nature and the amount of a particular tax burden imposed could not have been understood and foreseen by the taxpayer at the time of a particular voluntary act, the law which attempts to make such voluntary act the occasion for a tax is so arbitrary, burdensome and capricious as to amount to a confiscation of property and to be offensive to the provisions of the Fifth Amendment to the United States Constitution prohibiting the taking of property without due process of law", citing *Nichols* v. *Coolidge*, 274 U. S. 531; *Coolidge* v. *Long*, 282 U. S. 582; *Blodgett* v. *Holden*, 275 U. S. 142; and *Untermyer* v. *Anderson*, 276 U. S. 440.

*Nichols* v. *Coolidge, supra*, involved estate tax under the Revenue Act of 1919. The question there considered by the Court was whether Congress had the power to require executors to pay an excise tax ostensibly laid upon transfer of property by death, reckoned upon its value "plus the value of other property conveyed before the enactment in entire good faith and without contemplation of death." In *Coolidge* v. *Long, supra*, the constitutionality of a state statute imposing an excise tax on the succession to property by death was involved. In both cases it was held in substance that

---

[2] SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property ; except that—

\* \* \* \* \* \* \*

(8) SAME—CORPORATION CONTROLLED BY TRANSFEROR.—If the property was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) \* \* \*, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the laws applicable to the year in which the transfer was made.

SEC. 112 (b) (5), same as sec. 203 (b) (4), 1924 and 1926 Acts.

neither Congress nor a state legislature has the power to exact a tax, under the guise of an excise tax on the succession to or transfer of property by death, based upon the value of property at the time of death, the succession to or the transfer of which property had been effected prior to the enactment of the statute and without contemplation of death. As stated in *Nichols* v. *Coolidge, supra*, an excise, the amount of which is "made to depend upon past lawful transactions *not testamentary in character and beyond recall*" is "so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment." (Emphasis supplied.)

In *Blodgett* v. *Holden, supra*, and *Untermyer* v. *Anderson, supra*, the constitutionality of the tax imposed by section 319 of the Revenue Act of 1924 upon gifts made during the calendar year 1924 was in question. The Court held that in so far as the statute imposed a tax upon the donors upon gifts made prior to June 2, 1924, its effective date, it was invalid. The Court, in *Blodgett* v. *Holden, supra*, stated that:

It seems wholly unreasonable that *one who*, in entire good faith and without the slightest premonition of such consequence, *made absolute disposition of his property* by gifts *should thereafter be required to pay a charge for so doing.* [Emphasis supplied.]

*Nichols* v. *Coolidge, supra; Coolidge* v. *Long, supra; Blodgett* v. *Holden, supra;* and *Untermyer* v. *Anderson, supra*, are distinguishable from the instant proceeding upon the facts, and the principles of these cases are not, therefore, applicable here. Here the taxes are not taxes laid upon the transferor in the years 1924 to 1929, inclusive, upon the transfer of securities by the transferor completed on December 26, 1923, prior to the enactment of the 1924 Act. The taxes here are laid upon the petitioner, an entity wholly separate and distinct from the transferor, upon transactions made in 1924 to 1929, inclusive.

In *Nichols* v. *Coolidge, supra*, the Commissioner sought to tax in 1921 transfers made and completed in 1917 and prior thereto. *Untermyer* v. *Anderson, supra*, and *Blodgett* v. *Holden, supra*, involved a tax laid upon *donors* of gifts fully consummated prior to the passage of the statute and did not involve sales by the donees. In the instant proceedings the profits from the transactions or sales were included in taxable income of petitioner, the transferee, and in the year in which such sales were completed, the first of the sales in question having been made in 1924. Congress has the power "to require that taxable income should include profits from transactions consummated within the year." *Cooper* v. *United States*, 280 U. S. 409.

In that case, discussed on brief by petitioner, taxpayer acquired securities by gift from her husband on November 1, 1921, which she

sold on November 7, 1921, all before the effective date (November 23, 1921) of the Revenue Act of 1921, and claimed that (1) section 202 (a) (2) of the 1921 Act should not be construed as applicable to transactions fully completed before the enactment of the statute, and (2) that, if construed to apply where both gift and sale were consummated before such enactment, the section is arbitrary and capricious and therefore invalid under the due process clause of the Fifth Amendment. The facts in that case are somewhat analogous to the facts in this proceeding. There the taxpayer was the donee and the tax involved was laid upon the profits of a sale made by her. In this proceeding the taxpayer, the petitioner, is the transferee and the tax involved is sought to be laid upon the profits of sales made by it. Furthermore, the sections involved in that case and in this proceeding are similar in that the gift statute requires that the cost to the donor be used as the cost basis to the donee, and the statutes here involved require that the cost to the transferor be used as the cost basis to the transferee corporation. That case, therefore, does not support the position of petitioner here. On the contrary, in principle it supports the position of the respondent here. The United States Supreme Court there held the gift statute valid, and stated:

* * * None of these cases [*Nichols* v. *Coolidge, supra; Untermyer* v. *Anderson, supra; Blodgett* v. *Holden, supra*] is in point; they gave no consideration to the power of Congress to require that taxable income *should include profits from transactions consummated within the year.* [Emphasis supplied.]

In *Milliken* v. *United States*, 283 U. S. 15 (cited on brief by petitioner as restating the principle enunciated in *Nichols* v. *Coolidge, supra,* and *Untermyer* v. *Anderson, supra*), as in *Nichols* v. *Coolidge, supra,* section 402 (c) of the Revenue Act of 1918 was involved. However, in the *Milliken* case, the gift was concededly made in contemplation of death, while in the *Coolidge* case, the gifts were not made in contemplation of death. The taxpayer in the *Milliken* case contended that section 402 (c) of the 1918 Act was invalid because (1) it reached a gift made in contemplation of death before its enactment and because (2) it measured the tax by rates not in force when the gift was made, applied to the value of the property, not when given, but at the uncertain later time of the death of the donor. The Court, in the *Milliken* case, while approving the principle of the *Nichols* and *Untermyer* cases, did not, however, apply it because it was obviously based upon different facts, and it held the statute valid as to gifts made in contemplation of death, stating in part as follows:

[4] But a *tax is not necessarily and certainly arbitrary and therefore invalid because retroactively applied,* and taxing acts having retroactive features have been upheld in view of the particular circumstances disclosed and considered by the court, See *Stockdale* v. *Atlantic Insurance Co.,* 20 Wall.

323, 331, 22 L. Ed. 348; *Railroad Co.* v. *Rose*, 95 U. S. 80, 24 L. Ed. 376; *Western Union Railroad Co.* v. *United States*, 101 U. S. 543, 549, 25 L. Ed. 1068; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; *Billings* v. *United States*, 232 U. S. 261, 282, 34 L. St. 421, 58 L. Ed. 596; *Brushaber* v. *Union Pacific R. R. Co.*, 240 U. S. 1, 20, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; *Lynch* v. *Hornby*, 247 U. S. 339, 343, 38 S. Ct. 543, 62 L. Ed. 1149, *Hecht* v. *Malley*, 265 U. S. 144, 164, 44 S. Ct. 462, 68 L. Ed. 949; *Cooper* v. *United States*, 280 U. S. 409, 50 S. Ct. 164, 74 L. Ed. 516. See *Taft* v. *Bowers, supra*, *United States* v. *Heinszen*, 206 U. S. 370, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688; *Graham* v. *Goodcell*, 282 U. S. 409, 51 S. Ct. 186, 75 L. Ed.— decided January 26, 1931.

Hence, *in challenging the present tax it does not suffice to say that the gift antedated the statute.* It is necessary to consider the nature of the tax and of the decedent's gift. * * * [Emphasis supplied.]

The petitioner, on brief, overlooks the foregoing quoted language and quotes from the *Milliken* case language which precedes it therein as follows:

* * * It was held [in *Untermyer* v. *Anderson, supra*] that the retroactive provision of the novel gift tax of the Revenue Act of 1924 was invalid as applied to gifts antedating the act. *In both (cases)* [*Nichols* v. *Coolidge, supra, and Untermyer* v. *Anderson, supra*] *the point was stressed, as the basis of decision, that the nature and amount of the tax burden imposed could not have been understood and foreseen by the taxpayer at the time of the particular voluntary act which was made the occasion of the tax.* [Emphasis supplied.]

The situation indicated by the language in italics was found by the Court not to be analogous to the situation presented in the *Milliken* case, and, in our opinion, is not analogous to the situation presented by the facts here. At the time petitioner acquired the stock from E. N. D'Ancona any profits made prior to the enactment of the 1924 Act on the sale of any of the securities acquired by it from E. N. D'Ancona would have been taxable under the Revenue Act of 1921 and the transfer from E. N. D'Ancona to petitioner was a nontaxable transfer under section 202 (c) (3) of the Revenue Act of 1921. That the 1924 Act may have changed the amount of tax to be paid because it provided that the basis shall be cost to transferor, instead of cost to petitioner as provided in the 1921 Act, does not invalidate the sections involved. The petitioner, because of such change in basis, is required under the facts of this case to pay a tax on the gain accruing while the securities were held by E. N. D'Ancona, the transferor, plus the gain accruing while the securities were held by petitioner until sale thereof. Had the market value of the securities at the time of transfer to petitioner been less than cost to E. N. D'Ancona, such change in basis would have been to the advantage of petitioner, as it would have decreased the profit. As the market value was higher at the time of transfer than cost to E. N. D'Ancona, such change in basis increased the profit. However, the

statutes here involved can not be declared in conflict with the Federal Constitution merely because they require subsequent gains referable to prior nontaxable transactions to be treated as a part of the taxpayer's gross income. *Cooper* v. *United States, supra,* and cases cited therein.

Nor can they be declared unconstitutional because they, in certain situations, increase the tax. The change in basis in effect here is similar to an increase in the rate of tax, as to which the Court stated in the *Milliken* case as follows:

\* \* \* The present gift was subject to the excise when made; and, for reasons already indicated, we think a mere increase in the tax, pursuant to a policy of which the donor was forewarned at the time he elected to exercise the privilege, did not change its character. See *Hecht* v. *Malley,* supra, page 164 of 265 U. S., 44 S. Ct. 462. \* \* \*

See also *Perthur Holding Corporation,* 61 Fed. (2d) 785, affirming 23 B. T. A. 1129, wherein the validity of section 204 (a) (8) of the 1926 Act was in question upon the ground that it resulted in double taxation, the court stating as follows:

\* \* \* we assume that he [Kuttroff] too will pay a tax upon the same amount. That may be unfair, but it is not unconstitutional; again, it was a matter for Kuttroff to consider when he put on a corporate dress. \* \* \* No doubt there are limits to what Congress may do under the guise of taxation \* \* \*. But in general it is free to depress one kind of activity and promote another, for the incidence of taxation inevitably has direct social and economic effects, and with them courts do not and must not, concern themselves. If these sections unduly discourage incorporation of such enterprises, Congress may have intended it, and was within its powers if it did. It is hard to conceive greater chaos than if judges were to upset fiscal policies of which they disapprove.

It appears in *Newman Saunders & Co.* v. *United States, supra; Osburn California Corporation* v. *Welch, supra; Kay Finance Corporation, supra;* and *Haas Building Co., supra,* that the property involved in those cases was acquired by the taxpayer prior to the enactment of the 1924 Act. Hence the fact that the securities here involved were acquired by the petitioner prior to the enactment of the 1924 Act, upon which petitioner bases its claim of unconstitutionality of the sections involved, was present in each of those cases. However, the petitioner argues, in effect, that such cases, in which the retroactive provisions of the statutes in question were considered, presented no consideration of the possible effect of such provisions upon a minority stockholder before the transfer, a stockholder who became such after the transfer, or a creditor of the corporation, as well as upon the transferee corporation itself. While it may not expressly appear from the opinions of the courts and the Board that consideration was given to every possible effect of such retroactive provisions upon all those above enumerated, in our opinion, we would not be justified in saying that these phases of the questions were not considered, whether or not argued or presented by counsel.

In any event, we believe the doctrines of those cases to be sufficiently broad to govern the instant proceeding; and in *Haas Building Co.*, *supra*, the Board gave consideration to the effect of the sections involved upon minority stockholders, as appears from the following:

\* \* \* The use of the transferor basis as set out in section 204 (a) (8) has heretofore been upheld as not in violation of the Constitution. *Newman Saunders & Co.* v. *United States*, 36 Fed. (2d) 1009 (certiorari denied, 281 U. S. 760), and *Osburn California Corporation* v. *Welch*, 39 Fed. (2d) 41. In both of the above cases it was pointed out that it was within the power of Congress to prescribe the use of the transferor basis where no tax was imposed on the profit resulting from the exchange by which the property was transferred to the corporation. While the question of the effect of a minority interest was apparently not raised, for reasons heretofore stated, we are of the opinion that this does not change the situation. \* \* \*

For the foregoing reasons we hold that section 204 (a) (8) of the Revenue Acts of 1924 and 1926, and section 113 (a) (8) of the Revenue Act of 1928 are constitutional. The determination of the respondent is approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*