QUESTIONS: 1. May the pilot commission, in exercising its responsibilities in approving rates of pilotage at Port Everglades under the provisions of s. 310.11, F.S., approve a rate of pilotage based on tonnage of the vessel to which pilotage services are rendered? 2. May the board of pilot commissioners grant a rate increase at the request of the pilot association without first receiving financial data from the pilot association either in the form of an audit by the pilot commission's auditor or, alternatively, a financial statement from a certified public accountant engaged by the pilot association?
SUMMARY: The pilot commission may approve a rate of pilotage under a formula which takes tonnage into account in arriving at the fee to be charged. The pilot commission should not consider a rate increase without giving notice to all interested persons, including the pilot association, under Ch. 120, F.S. Before responding to the two questions, acknowledgment is here made that you have called to my attention the fact that the Pilot Commission at Port Everglades serves in accordance with the authority of Ch.310, F.S., except that its manner of appointment and terms of office are governed by the provisions of Ch. 73-418, Laws of Florida. It is also noted that, under the current rate of pilotage at Port Everglades, the rate of pilotage is based upon draft of vessels plus a surcharge for tonnage of the vessels served. The answer to your first question is in the affirmative. Section 310.11, F.S., in essential particulars, provides that the board of each port may fix a rate of pilotage as long as the rate is not less than the rate therein specified, which shall be paid by any vessel entering the port. The minimum rate provided is not less than $66 for any steamer or vessel drawing less than 8 feet and for steamers or vessels drawing 8 feet or over the minimum rate is $8.25 per foot, whether owned wholly by citizens of this state or not, with the exception for steamers or vessels drawing less than 6 feet and having a coastwise license being exempt from paying pilotage unless said steamer or vessel employes a pilot. All steamers or vessels other than those exempt from pilotage, unless a pilot is actively employed, must pay the fixed rate whether the pilot is employed or not as long as the pilot speaks to the ship. At this junction it is well to note that the above provisions, in order to be valid, must not be in conflict with paramount law. Article I, s. 10, Clauses 2 and 3 of the Constitution of the United States, among other things, provides: No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws: and the net Produce of all Duties and Imports, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress. No State shall, without the Consent of Congress, lay any Duty of Tonnage, keep Troops, or Ships of War in time of Peace, enter into any Agreement or Compact with another State, or with a foreign Power, or engage in War, unless actually invaded, or in such imminent Danger as will not admit of delay. (Emphasis supplied.) The above-quoted clauses forbid a state from laying "Imposts or Duties on Imports or Exports" and from laying any "Duty of Tonnage." The cases arising under the above-quoted clauses make a distinction between laying any imposts on tonnage and charging a fee for pilotage under a formula which takes tonnage into account in arriving at the fee to be charged. Generally, the United States Supreme Court has ruled that a fee or charge computed by a tonnage formula is not necessarily a "Duty of Tonnage" or a "Tax on Tonnage." As long as the fee or charge is for services rendered, it can be based on a tonnage formula. Packet Co. v. Keokuk,95 U.S. 80 (1877); Transportation Co. v. Parkersburg, 107 U.S. 691
(1883). More specifically, the Supreme Court has distinguished a duty on tonnage from pilot fees. In Cooley v. Board of Wardens of the Port of Philadelphia, 12 How. 199 (1851), the court stated: This provision of the Constitution [Article I, Section 10, Clauses 2 and 3] was intended to operate upon subjects actually existing and well understood when the Constitution was formed. Imposts, and duties on imports, exports and tonnage, were then known to the commerce of the civilized world to be as distinct from fees and charges for pilotage, and from the penalties by which commercial States enforced their laws, as they were from charges of wharfage or towage, or any other local port charges for services rendered to vessels or cargoes, and to declare that such pilot fees or penalties are embraced within the words imposts, or duties on imports, or exports, or tonnage, would be to confound things essentially different, and which must have been known to be actually different by those who used this language . . . It is the thing and not the name that is to be considered. Therefore, as a part of the affirmative answer to question 1, you are advised that a pilotage fee under a formula which takes into account tonnage does not constitute the laying of a duty contrary to the above-quoted clauses contained in the Constitution of the United States. This brings the discussion to the provisions of s. 310.11, F.S., above referred to. It is noted that the commissioners, referred to as commissioners under s. 310.01, F.S., may fix the rate of pilotage so long as the rate fixed is not less than the amount specified. Therefore, the commissioners may, in the exercise of their judgments, take into account tonnage of ships served in formulating a rate of pilotage so long as the rate fixed does not violate the terms of s. 310.11. The above conclusion is consistent with the rationale set forth in the case of Vincent v. Foss Crabtree, 160 So. 49 (Fla. 1934). In the Vincent case an effort was made to enjoin the defendants as harbor masters from collecting $10 for each of two schooners which entered the Port of Jacksonville. The court refused to enjoin and in essence approved the fee as being reasonable and not in conflict with federal law. It is interesting to note that the injunction effort was predicated on the authority of the case of Webb v. Dunn, 18 Fla. 721. The opinion in Vincent overruled Webb v. Dunn to the extent of conflict. It is further interesting to note that in the case of Cooley, supra, the court cited Webb v. Dunn as being a case in support of the proposition that the charge of pilot fee for the entry of vessels into ports for unloading, whether the fee was earned or not, was void. Your second question is answered in the negative. It is noted that s. 310.031, F.S., in part, provides as follows: "The board (of Port Wardens and Pilot Commissioners) shall receive annually from each pilot one percent of the gross amount of pilotage earned by said pilot during each year . . . ." The answer to your second question is found in the fact that the fixing of rates is an agency action, controlled by Ch. 120, F.S. Therefore, the commission would not consider rate increases without giving notice to all interested parties, including the pilot association.